Rule 23 order filed
July 14, 2006;
published as an opinion
August 8, 2006.

NO. 5-05-0160

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| STEPHEN J. BURTON, JR., Individually and on Behalf of Others Similarly Situated, | ) Appeal from the<br>) Circuit Court of<br>) St. Clair County. |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) No. 03-L-275 |
| | ) |
| AIRBORNE EXPRESS, INC., | ) Honorable<br>) Michael J. O'Malley, |
| Defendant-Appellee. | ) Judge, presiding. |

_____

JUSTICE HOPKINS delivered the opinion of the court:

The plaintiff, Stephen J. Burton, Jr., individually and on behalf of all similarly situated, appeals the circuit court's order dismissing his breach-of-contract action against the defendant, Airborne Express, Inc. (Airborne). On appeal, Burton argues that his breach-of-contract action is not preempted by the Airline Deregulation Act of 1978 (Airline Deregulation Act) (49 U.S.C. §41713(b)(1) (2000)) and that his complaint sufficiently alleged that Airborne breached the parties' contract by failing to procure insurance from a third party. We affirm the circuit court's dismissal on grounds other than the reason relied on by the circuit court.

FACTS

On May 12, 2003, Burton filed a class-action complaint in the circuit court of St. Clair County against Airborne, a courier service that provides package transportation and delivery services. In this complaint, Burton alleged that Airborne was unjustly enriched and violated the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act)

1

(815 ILCS 505/1 *et seq.* (West 2004)). On July 3, 2003, Airborne removed the case to federal court, but on November 18, 2003, the United States District Court for the Southern District of Illinois remanded the cause to the circuit court of St. Clair County.

On April 12, 2004, Burton filed a motion for leave to file a first amended complaint, which the circuit court granted on April 13, 2004. In his first amended class-action complaint, Burton omitted his Consumer Fraud Act and unjust enrichment claims and instead alleged one claim for breach of contract. Burton alleged that Airborne breached its shipping contract when it collected "Asset Protection insurance" premiums from him and the class and then failed to remit the premiums to an insurance company to procure shipment insurance. Burton sought compensation for the insurance premiums that he and the class had paid to Airborne but were never remitted to the third-party insurance company. Burton referenced and attached to his complaint the parties' "Service Conditions" agreement, which read in part as follows:

"H.     DECLARED VALUE AND ASSET PROTECTION CHARGES

1.     Sender may declare on the face of the airbill the value of the shipment at the time of issuance, for an additional charge. A $2.50 minimum will be charged for all shipments exceeding $100 in value. ***

2.     In the absence of a declared value or a purchase of Asset Protection by the sender[,] Airborne Express' [*sic*] $100 per package and other limit of liability rules will apply ***.

3.     Asset Protection is available at an additional charge. A $3.25 minimum will be charged for all shipments having a value up to $500. For shipments exceeding $500 in value[,] each $100 (or fraction thereof) of value in excess of $500 will be charged, in addition to the minimum charge. When the shipment valuation designated by the shipper is $25 or more, Asset Protection is

2

mandatory for the entire shipment value."

Burton also referenced and attached to his complaint a copy of the airbill and register receipt for his shipment on January 21, 2003.

The airbill stated:

"ABSENT A HIGHER SHIPMENT VALUATION[,] CARRIER'S LIABILITY IS LIMITED TO $100 PER PACKAGE, OR ACTUAL VALUE, WHICHEVER IS LESS ***."

In the "Declared Value or Asset Protection" section of the airbill, the box under "Asset Protection" was checked, and "$250.00" was written under "Shipment Valuation."

On July 7, 2004, Airborne filed a motion to dismiss Burton's first amended complaint, arguing that the Airline Deregulation Act preempted Burton's breach-of-contract claim and that Airborne's "Asset Protection" provision was merely a warranty of its own service and performance, not a promise to procure insurance, and that therefore Burton's breach-of-contract claim failed as a matter of law. In his response to Airborne's motion to dismiss, Burton argued that the Airline Deregulation Act did not preempt his claim and that he had set forth the necessary elements to establish his cause of action by alleging that the airbill required Airborne to procure shipment insurance from a third-party insurer and that Airborne breached the contract because it did not pay the insurance premium to the third-party insurer. On February 22, 2005, after hearing arguments, the circuit court dismissed Burton's complaint, finding that the Airline Deregulation Act preempted his action. On March 21, 2005, Burton filed his notice of appeal.

## ANALYSIS

Airborne's motion to dismiss was a hybrid motion seeking relief under sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2004)). In its motion to dismiss, Airborne stated that it moved "to dismiss this case with prejudice

3

pursuant to [section 2-619] for failure to state a claim." A motion to dismiss pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2004)) attacks the sufficiency of a complaint and raises the question of whether the complaint states a claim upon which relief can be granted. *Beahringer v. Page*, 204 Ill. 2d 363, 369 (2003). A motion to dismiss pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2004)) admits the legal sufficiency of a plaintiff's complaint but raises defects, defenses, or other affirmative matters that appear on the complaint's face or that are established by external submissions acting to defeat the complaint's allegations. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115 (1993); *Russell v. Kinney Contractors, Inc.*, 342 Ill. App. 3d 666, 670 (2003). Section 2-619.1 of the Code provides that section 2-615 and section 2-619 motions may be filed together as a single motion but that a combined motion shall be divided into parts that are limited to and specify the single section of the Code under which relief is sought. 735 ILCS 5/2-619.1 (West 2004). While a failure to properly label a combined motion to dismiss is not a pleading practice we encourage, a reversal for that deficiency is appropriate only when prejudice to the nonmovant results. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 484 (1994); *Storm & Associates, Ltd. v. Cuculich*, 298 Ill. App. 3d 1040, 1046 (1998).

In the present case, the parties considered Airborne's motion a combined section 2-615 and section 2-619 motion to dismiss by arguing, in the circuit court and on appeal, the issues of whether Burton's contract claim was preempted by the Airline Deregulation Act (requiring a dismissal under section 2-619) and whether Burton failed to sufficiently allege that Airborne had breached the parties' contract, considering the contract's language (requiring a dismissal under section 2-615). Accordingly, Burton suffers no prejudice by reason of Airborne's failure to properly designate the sections of the Code under which it sought a dismissal. See *Storm & Associates, Ltd.*, 298 Ill. App. 3d at 1047 (since the support of the motion to dismiss relied on nothing other than facts alleged in complaint, the plaintiff

4

suffered no prejudice by the defendants' failure to properly designate the Code section under which the dismissal was sought). Further, Burton never objected to the hybrid nature of the motion in the circuit court, nor does he raise the issue on appeal; therefore, on appeal he has waived any issue concerning the form of the motion. See *Suhadolnik v. City of Springfield*, 184 Ill. App. 3d 155, 188 (1989) (the plaintiff's failure to object to the commingling of section 2-615 and section 2-619 motions to dismiss was held on appeal to be a waiver of the issue concerning the form of the motion). Because the resolution of either motion involves only a question of law, this court's review is *de novo*. *Storm & Associates, Ltd.*, 298 Ill. App. 3d at 1047.

Airline Deregulation Act Preemption

Burton argues that the circuit court erred in ruling that the Airline Deregulation Act preempted his breach-of-contract action against Airborne for Airborne's failure to procure insurance from a third party pursuant to its contract. We agree.

Federal preemption is a defect, defense, or affirmative matter properly alleged in a motion to dismiss pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2004)). Pursuant to the preemption doctrine, which arises from the supremacy clause of the United States Constitution (U.S. Const., art. VI, cl. 2), we examine whether Congress intended for federal law to preempt state law in a given case. *Fidelity Federal Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152, 73 L. Ed. 2d 664, 674-75, 102 S. Ct. 3014, 3022 (1982); *Cohen v. McDonald's Corp.*, 347 Ill. App. 3d 627, 633 (2004).

Section 41713(b)(1) of the Airline Deregulation Act expressly preempts the States from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation." 49 U.S.C. §41713(b)(1) (2000). State common law is considered an "other provision having the force and effect of law" for purposes of this statute. *United Airlines,*

5

*Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 607 (7th Cir. 2000). Congress enacted the express-preemption provision in the Airline Deregulation Act "[t]o ensure that the States would not undo federal deregulation with regulation of their own." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378, 119 L. Ed. 2d 157, 164, 112 S. Ct. 2031, 2034 (1992).

The Supreme Court first considered the scope of preemption under the Airline Deregulation Act in *Morales*, 504 U.S. at 378, 119 L. Ed. 2d at 163-64, 112 S. Ct. at 2034. In holding that the Airline Deregulation Act preempted the application of state consumer protection statutes to airline advertisements, the Court stated that the statutory phrase "relating to"[1] expressed a broad preemptive purpose so that any claim that has "a connection with, or reference to," an airline's prices, routes, or services is preempted under the statute. *Morales*, 504 U.S. at 384, 119 L. Ed. 2d at 167-68, 112 S. Ct. at 2037. The Court noted, however, that state actions affecting airline prices, routes, or services " 'in too tenuous, remote, or peripheral a manner' " would not be preempted. *Morales*, 504 U.S. at 390, 119 L. Ed. 2d at 172, 112 S. Ct. at 2040 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100

---

[1]In reenacting Title 49 of the United States Code, Congress revised this clause in 1994 to read as follows: "[A] State *** may not enact or enforce a law, regulation, or other provision having the force and effect of law *related* to a price, route, or service of an air carrier ***." (Emphasis added.) 49 U.S.C. §41713(b)(1) (1994). Congress intended that the revision make no substantive change. Pub. L. 103-272, §1(a), 108 Stat. 745.

n.21, 77 L. Ed. 2d 490, 503 n.21, 103 S. Ct. 2890, 2901 n.21 (1983)).

The Court next considered the Airline Deregulation Act's preemption clause in *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 130 L. Ed. 2d 715, 115 S. Ct. 817 (1995). The Court in *Wolens* held that contract claims against airlines, such as those involving frequent-flyer programs, even when related to prices, routes, or services, are not preempted by the Airline Deregulation Act when they merely seek to enforce the parties' "own, self-imposed undertakings." *Wolens*, 513 U.S. at 228, 130 L. Ed. 2d at 725-26, 115 S. Ct. at 824. The Court held that the Airline Deregulation Act's preemption prescription bars state-imposed regulation of air carriers but allows room for court enforcement of contract terms set by the parties themselves. *Wolens*, 513 U.S. at 228-29, 130 L. Ed. 2d at 726, 115 S. Ct. at 824.

The Court in *Wolens* noted that the word series "law, rule, regulation, standard, or other provision" connotes official, government-imposed policies, not the terms of a private contract. *Wolens*, 513 U.S. at 229 n.5, 130 L. Ed. 2d at 726 n.5, 115 S. Ct. at 824 n.5. The Court also noted that the phrase "having the force and effect of law" is most naturally read to reference binding standards of conduct that operate irrespective of private agreements. *Wolens*, 513 U.S. at 229 n.5, 130 L. Ed. 2d at 726 n.5, 115 S. Ct. at 824 n.5. The Court held that the Airline Deregulation Act was designed to promote "maximum reliance on competitive market forces" (49 U.S.C. App. §1302(a)(4) (1988)) and that market efficiency requires an effective means to enforce private agreements. *Wolens*, 513 U.S. at 230, 130 L. Ed. 2d at 726, 115 S. Ct. at 824. The Court limited its breach-of-contract exception to actions confined to the terms of the parties' bargain "with no enlargement or enhancement based on state laws or policies external to the agreement." *Wolens*, 513 U.S. at 233, 130 L. Ed. 2d at 728, 115 S. Ct. at 826; see also *Smith v. Comair, Inc.*, 134 F.3d 254, 258 (4th Cir. 1998) (the contract action could only be adjudicated by reference to federal law and policies

7

external to the parties' bargain, and therefore, it was preempted under the Airline Deregulation Act).

Accordingly, in deciding whether contract claims are preempted, we distinguish between obligations dictated by the state and those voluntarily undertaken by the airline. See *Wolens*, 513 U.S. at 233, 130 L. Ed. 2d at 728, 115 S. Ct. at 826. When parties privately negotiate a contract's terms and an action is later filed in state court for a breach of those terms, there is generally no specter of state-imposed regulation. *Delta Air Lines, Inc. v. Black*, 116 S.W.3d 745, 753 (Tex. 2003). "[T]he enforcement of a contractual commitment voluntarily undertaken does not amount to state enactment or enforcement of a law that the [Airline Deregulation Act]'s preemption provision forbids." *Delta Air Lines, Inc.*, 116 S.W.3d at 754.

In the present case, Burton's breach-of-contract action against Airborne is not preempted by the Airline Deregulation Act because the court's concern is restricted to the parties' bargain. If Burton were to prevail in demonstrating that the parties' contract required Airborne to procure shipment insurance from a third-party insurance company, that Burton paid for the insurance, and that Airborne breached the contract by failing to remit the insurance premiums to the insurance company to procure the insurance, Airborne's breach results from its actions regarding its own self-imposed undertaking, arising from the language of the contract and not from external state policy. Accordingly, Burton's breach-of-contract claim is based upon Airborne's written and self-imposed undertaking, can be adjudicated without reference to law and policies external to the parties' bargain, and is not preempted by the Airline Deregulation Act. See *Wolens*, 513 U.S. at 232-33, 130 L. Ed. 2d at 728, 115 S. Ct. at 826; see also *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1432 (7th Cir. 1996) (the plaintiff's claim that Saudi Arabian Airlines breached its agreement to honor confirmed reservations involved privately ordered obligations and was

8

not preempted by the Airline Deregulation Act); *Shubert v. Federal Express Corp.*, 306 Ill. App. 3d 1056, 1059 (1999) (a written undertaking of an air carrier was not preempted even though it related to rates or service).

Airborne argues that because its contract limited its liability, federal law requires it to offer the shipper an opportunity to purchase higher liability, which it does in the "Asset Protection" and "Declared Value" sections that Burton relies on in asserting his claim. See *Mudd-Lyman Sales & Service Corp. v. United Parcel Service, Inc.*, 236 F. Supp. 2d 907 (N.D. Ill. 2002) (if a carrier chooses to limit its liability through a contract provision, the contract must offer the shipper an opportunity to purchase higher liability). Airborne argues, therefore, that the Airline Deregulation Act preempts Burton's claim because the "Asset Protection" and "Declared Value" provisions are mandated by federal law and are not private, self-imposed obligations referred to in *Wolens*. However, neither federal law nor state law requires Airborne to procure shipment insurance from an insurance company on behalf of its customers, which is the basis of Burton's claim. Burton's allegations–that the language Airborne utilized in its agreement with customers is, at the least, ambiguous and requires it to procure insurance from a third-party insurer–do not involve the federal mandates regarding liability limitations but instead hinge on the contract language utilized by Airborne that allegedly created a self-imposed undertaking to procure shipment insurance from an insurance company. Because Burton seeks a recovery solely for Airborne's alleged breach of its own self-imposed undertakings, his breach-of-contract action against Airborne is not preempted by the Airline Deregulation Act. The circuit court erred in dismissing Burton's complaint on this basis.

## Breach of Contract

Burton argues that the checked box next to "Asset Protection" on the airbill can be reasonably construed as Airborne's agreement to procure insurance from a third party;

therefore, Burton argues, his complaint for breach of contract sufficiently alleges that Airborne breached the contract by failing to procure insurance from a third party. Airborne counters that because the language of the contract clearly does not obligate Airborne to procure insurance from a third-party insurer, Burton fails to state a breach-of-contract claim as a matter of law.

Although the circuit court dismissed this action on the basis of Airline Deregulation Act preemption, this court may affirm the circuit court's dismissal for any reason appearing in the record. *Gunthorp v. Golan*, 184 Ill. 2d 432, 438 (1998) (the trial court may be affirmed on any basis in the record without regard to whether the trial court relied upon that ground or whether the trial court's rationale was correct); *Geick v. Kay*, 236 Ill. App. 3d 868, 873 (1992) (although the trial court's order did not specify whether the counts were being dismissed under section 2-615 or section 2-619, the reviewing court may affirm a correct decision for any reason appearing in the record, regardless of the basis relied upon by the trial court).

The question presented by a section 2-615 motion to dismiss is whether sufficient facts are contained in the pleadings that, if proved, would entitle the plaintiff to relief. *Evers v. Edward Hospital Ass'n*, 247 Ill. App. 3d 717, 724 (1993). A motion to dismiss under section 2-615 admits all well-pleaded facts but does not admit conclusions of law or conclusions of fact not supported by allegations of specific fact. *Manuel v. Red Hill Community Unit School District No. 10 Board of Education*, 324 Ill. App. 3d 279, 288 (2001). Exhibits are a part of the complaint to which they are attached, and the factual allegations contained within an exhibit attached to a complaint serve to negate inconsistent allegations of fact contained within the body of the complaint. *Metrick v. Chatz*, 266 Ill. App. 3d 649, 653 (1994); see also *Evers*, 247 Ill. App. 3d at 724 (allegations in pleadings that conflict with facts disclosed in exhibits attached to the pleadings are not admitted as true, but

10

rather, the exhibit controls); *McCormick v. McCormick*, 118 Ill. App. 3d 455, 460 (1983) (when an exhibit attached to a complaint is the basis of the suit and conflicts with the complaint's allegations, the exhibit negates the complaint's allegations).

The primary objective in construing a contract is to give effect to the parties' intention. *Schek v. Chicago Transit Authority*, 42 Ill. 2d 362, 364 (1969). Where a contract is clear and unambiguous, the court must ascertain the parties' intent from the contract itself, considering only the words used. *Sigma Cos. v. Regas*, 255 Ill. App. 3d 857, 861 (1993). The parties' intention must be ascertained from the plain and ordinary meaning of the language of the contract. *O'Shield v. Lakeside Bank*, 335 Ill. App. 3d 834, 839 (2002); *Board of Regents v. Wilson*, 27 Ill. App. 3d 26, 31 (1975). A contract is to be construed as a whole, giving meaning and effect to every provision thereof, if possible, since we presume that every clause in the contract was inserted deliberately and for a purpose. *Martindell v. Lake Shore National Bank*, 15 Ill. 2d 272, 283 (1958); *Board of Regents*, 27 Ill. App. 3d at 31. Where the contract is clear, its interpretation is a question of law to be determined only from the terms of the contract. *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill. 2d 281, 288 (1990); see also *Evers*, 247 Ill. App. 3d at 726 (the court may construe an unambiguous contract as a question of law pursuant to a motion to dismiss).

A contract is ambiguous where the language employed is susceptible to more than one reasonable meaning or is obscure in meaning through an indefiniteness of expression. *Meyer v. Marilyn Miglin, Inc.*, 273 Ill. App. 3d 882, 888 (1995). A contract is not rendered ambiguous merely because the parties do not agree on its meaning. *Joseph v. Lake Michigan Mortgage Co.*, 106 Ill. App. 3d 988, 991 (1982). Whether a contract is ambiguous or clear is also a question of law. *Quake Construction, Inc.*, 141 Ill. 2d at 288.

Burton attached to his complaint portions of the parties' service guide agreement. See 735 ILCS 5/2-606 (West 2002) (if a claim is founded upon a written instrument, a copy

11

thereof, or of so much of the same as is relevant, must be attached to the pleading as an exhibit or recited therein).  This agreement read in part as follows:

"H.     DECLARED VALUE AND ASSET PROTECTION CHARGES

1.     Sender may declare on the face of the airbill the value of the shipment at the time of issuance, for an additional charge.  A $2.50 minimum will be charged for all shipments exceeding $100 in value.  ***

2.     In the absence of a declared value or a purchase of Asset Protection by the sender[,] Airborne Express' [*sic*] $100 per package and other limit of liability rules will apply ***.

3.     Asset Protection is available at an additional charge.  A $3.25 minimum will be charged for all shipments having a value up to $500.  For shipments exceeding $500 in value[,] each $100 (or fraction thereof) of value in excess of $500 will be charged, in addition to the minimum charge."

Burton argues that pursuant to the above language, Airborne offered to procure "Asset Protection insurance" from an insurance company for a $3.25 minimum charge for shipments valued at $500 or less, with a charge for each additional $100 in value.  Burton argues that because Airborne failed to remit the shipment insurance premium to a third-party insurer, it breached its agreement.

While it is lawful for a contract to expressly require one party to procure insurance on behalf of another (*Tanns v. Ben A. Borenstein & Co.*, 293 Ill. App. 3d 582, 584 (1997)), the parties' contract in the present case clearly did not require Airborne to procure shipment insurance on Burton's behalf from an insurance company, as alleged in Burton's complaint. Pursuant to the airbill, Airborne limited its liability to the lesser of $100-per-package or its actual value; however, Airborne offered shippers the opportunity to increase Airborne's liability for lost or damaged packages beyond the standard limitation of $100 per package by

12

paying a higher rate. The parties' provision that Airborne's liability was limited to $100 unless Burton paid a higher rate, together with the declaration by the plaintiff that his shipment had a value of $250 and the payment of a higher rate, did not constitute or result in a promise to procure insurance of any kind or nature. Because the portions of the contract referenced in and attached to the complaint belie the allegations upon which Burton's breach-of-contract action is premised, the circuit court properly dismissed Burton's complaint. See *Metrick*, 266 Ill. App. 3d at 653 (because the exhibit attached to the complaint belied the allegations upon which the plaintiffs' action was premised, the circuit court properly dismissed the action pursuant to section 2-615); *In re Estate of Casey*, 222 Ill. App. 3d 12, 19 (1991) (the complaint was properly dismissed pursuant to section 2-615 because a written agreement attached to the complaint belied the claim in the body of the complaint that the elements of a valid contract were present).

We conclude that when the complaint is stripped of its allegations that are legally deficient (*i.e.*, conclusional) and inconsistent (*i.e.*, those which conflict with the contract attached to the complaint), the complaint fails to state a cause of action as a matter of law, and we affirm the circuit court's order dismissing it.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of St. Clair County, for reasons other than the reason relied on by the circuit court.


Affirmed.


SPOMER, P.J., and DONOVAN, J., concur.

13

NO. 5-05-0160

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| STEPHEN J. BURTON, JR., Individually and on Behalf of Others Similarly Situated, | ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 03-L-275 |
| AIRBORNE EXPRESS, INC., | ) ) | Honorable Michael J. O'Malley, |
| Defendant-Appellee. | ) | Judge, presiding. |

**Rule 23 Order Filed:**      July 14, 2006
**Published as an opinion:**      August 8, 2006

**Justices**:      Honorable Terrence J. Hopkins, J.

                 Honorable Stephen L. Spomer, P.J., and
                 Honorable James K. Donovan, J.,
                 Concur

**Attorneys for Appellant**      Paul M. Weiss, Tod A. Lewis, Freed & Weiss, LLC, 111 West Washington Street, Suite 1331, Chicago, IL; Mark R. Diab, Phillip A. Bock, Diab & Bock, 20 N. Wacker Drive, Suite 1741, Chicago, IL 60606; Gail G. Renshaw, L. Thomas Lakin, Bradley M. Lakin, Richard J. Burke, Gary Peel, Gerald R. Walters, The Lakin Law Firm, P.C., 300 Evans Avenue, P.O. Box 229, Wood River, IL 62095-0229; Michael J. Freed, Much, Shelist, Freed, Denenberg, Ament & Rubenstein, P.C., 191 N. Wacker Drive, Suite 1800, Chicago, IL 60606

**Attorneys for Appellee**      Karen L. Kendall, Craig L. Unrath, Heyl, Royster, Voelker & Allen, 124 S.W. Adams, Suite 600, Peoria, IL 61602; Robert H. Shultz, Jr., Joseph P. Whyte, Deborah A. Hawkins, 103 W. Vandalia Street, Suite 100, Edwardsville, IL 62025-0467; Edwin V. Woodsome, Jr., D. Barclay Edmundson, William W. Oxley, T. Jason White, Orrick, Herrington & Sutcliffe, LLP, 777 South Figueroa Street, Suite 3200, Los Angeles, CA 90017-5855