# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Miller v. Harris*, 2013 IL App (2d) 120512

---

| | |
|---|---|
| Appellate Court Caption | WILLIAM MILLER and MAXINE MILLER, Individually and Derivatively on Behalf of Claimsco International, Inc., as Shareholders and Rightful Directors, Plaintiffs-Appellants, v. MICHAEL HARRIS and KENNETH HOXIE, Defendants (John Verchota and Miller Verchota, Inc., Defendants-Appellees). |
| District & No. | Second District<br>Docket No. 2-12-0512 |
| Filed | February 21, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The count of plaintiffs' complaint alleging a breach of fiduciary duty by their accountant and his firm was improperly dismissed for failing to state a claim on which relief could be granted, notwithstanding defendant's contention that he followed the contract under which he was employed, since the breach of duty claim was not based on the contract but, rather, was based on defendant's duties of honesty and loyalty in connection with doing accounting for plaintiff and his wife individually and the business plaintiff started, and the complaint adequately alleged those duties existed and that they were breached by defendant's participation in the takeover of the business. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 07-CH-2803; the Hon. Mitchell L. Hoffman, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Thomas W. Gooch III, of Gauthier & Gooch, of Wauconda, for appellants.

Robert Marc Chemers, Richard M. Waris, and Donald P. Eckler, all of Pretzel & Stouffer, Chrtd., of Chicago, for appellees.

Panel

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices McLaren and Zenoff concurred in the judgment and opinion.

## OPINION

¶ 1    The plaintiffs, William and Maxine Miller, who were two of the founders and shareholders of the closely held corporation Claimsco International, Inc., filed this action against the other shareholders, the defendants Michael Harris and Kenneth Hoxie, and the accountant who worked for all of them, the defendants John Verchota and his firm, Miller Verchota, Inc. (collectively referred to as Verchota). At issue in this appeal is count II of the fourth amended complaint, which alleged that Verchota breached his fiduciary duty toward the plaintiffs. (The remaining defendants settled with the plaintiffs, and the claims against them are not at issue here.) The trial court dismissed count II under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2010)) on the ground that it failed to state a claim upon which relief could be granted. The plaintiffs appealed. We reverse and remand.

¶ 2                                    BACKGROUND
¶ 3    The following facts are drawn from the allegations of the fourth amended complaint (complaint) which, for purposes of a motion pursuant to section 2-615 of the Code, we must take as true. *Khan v. Deutsche Bank AG*, 2012 IL 112219, ¶ 47 ("In reviewing the sufficiency of a complaint, we accept as true all well-pleaded facts in the complaint and all reasonable inferences that may be drawn therefrom.").

¶ 4    William Miller was an insurance claims adjuster who worked throughout his life for numerous independent insurance companies. Miller operated his claims adjusting business primarily in Toronto, Canada, but he became interested in expanding his business to include a similar company in the United States. About this time he met Michael Harris, and the two eventually decided to form a new company, Claimsco International, Inc., to operate in the United States. Miller's Canadian business provided almost $100,000 to commence operation of the new company. Shortly after Claimsco began doing business, Harris and Miller entered into a shareholders' agreement (the 1990 Agreement). Under that agreement, Miller would

act as chairman of the company and would own 1,000 of the 1,250 shares of the company; Harris would act as president and own 125 shares. (The remaining 125 shares were owned by Thomas Miles, who is not relevant to this case.)

¶ 5    In 1990, Claimsco (acting through Miller) hired Verchota as its tax accountant to handle necessary government filings and related duties. The complaint alleges that Verchota was retained under an oral agreement, the terms of which included the proviso that, in performing accounting duties for Claimsco, he would follow the terms of the 1990 Agreement.

¶ 6    In 1992, Miller and his wife, Maxine, hired Verchota to do their own tax-related accounting. Again, the complaint alleges that Verchota was retained via an oral agreement under which Verchota "agreed to use his best efforts to minimize taxation" to the Millers. The complaint also alleges that an implied term of the contract was that Verchota "agreed, as part of the duties any accountant would owe, to avoid any type of conflict with any other clients and further to avoid favoring any other client over the Millers." The complaint asserts that the Millers "subsequently" learned that Verchota had continued to perform tax accounting for Claimsco after 1992 and, upon information and belief, that he also did personal accounting work for Harris and perhaps Hoxie (a minority shareholder who became vice president of Claimsco between late 2001 and early 2002).

¶ 7    The complaint asserts that Verchota owed the Millers a duty of loyalty that required him "to remain free of any conflict with other clients and to follow" the Millers' instructions regarding the shareholders' agreements to be applied when doing his accounting for Claimsco "or, alternatively, *** to withdraw from continued representation as the accountant of all parties, including Claimsco, Harris, and [the] Millers." The complaint also asserts that Verchota's duty of loyalty required him to disclose to the Millers any conflicts that might develop with other clients.

¶ 8    In 2001, Miller transferred 500 of his 1,000 Claimsco shares to his wife as part of their estate planning. The 1990 Agreement provided that any shareholder could transfer shares to a spouse or child so long as the transferee agreed in writing to be bound by the 1990 Agreement.

¶ 9    In September 2002, approximately 10 years after the Millers first hired Verchota as their personal accountant, Harris asked Miller to attend a Claimsco business meeting. The complaint alleges that, unbeknownst to Miller, the purpose of the meeting was to seize control of Claimsco. At dinner the first night, Miller, Harris, and Hoxie were joined by a lawyer, a friend of Harris's with whom Harris and Hoxie had been consulting, allegedly to assist them in seizing control of Claimsco. The lawyer "coercively informed" Miller that the lawyer and Verchota had determined that Miller was personally liable to Claimsco for a "great deal of money," that the money would have to be repaid or else Claimsco and Miller would owe the Internal Revenue Service (IRS) a lot of money, and that the lawyer and Harris would "see to William's financial and personal downfall" unless Miller accepted the proposition about to be made. The proposition included the demand that Miller immediately surrender control of Claimsco to Harris through the execution of a new shareholders' agreement (2002 Agreement), under which Harris would own the majority of the shares and Hoxie's shares would be increased.

¶ 10    The complaint alleges that no consideration was given for the 2002 Agreement. The complaint acknowledges that, at the same time he signed the 2002 Agreement, Miller also signed a second agreement (Executive Agreement) under which he would continue as an employee of Claimsco (the chairman) for five years and would receive a $75,000 annual salary, the use of a car, and insurance. However, the complaint also alleges that none of the benefits granted to Miller under the Executive Agreement "can truly serve as consideration," because Miller already "had the right to these advantages as a majority shareholder" of Claimsco. The complaint states that Miller was reluctant to execute these two agreements, but he was "further coerced and pressured" by the lawyer, who told him that his transfer of 500 shares to his wife was "illegal" and "would get him in further trouble." Accordingly, "at the insistence" of the lawyer and the "considerable badgering" from the lawyer and Harris, Miller signed the two agreements and also signed his wife's name to them. The complaint states, however, that the Millers "maintain that all Shareholder Agreements subsequent to *** 1990 were void for want of consideration and the only valid Shareholder Agreement is" the 1990 Agreement.

¶ 11    The complaint alleges that, after the 2002 Agreement was signed, Harris and Hoxie, "assisted by Verchota, *** began a course of conduct to eliminate the Millers from any involvement in Claimsco *** and eliminate them from any corporate participation" as was their right as shareholders. The complaint alleges that this course of action included: conducting corporate directors' meetings and shareholders' meetings without notice to the Millers; cancelling (without notice) the credit cards held by Maxine Miller since 1990; changing the corporate health insurance program "in such a way as to deprive [the Millers] of their health insurance"; notifying Maxine Miller about the termination of her health insurance benefits in a manner that negatively affected her "opportunity to convert or take any action to maintain" those benefits; reporting distributions to Harris, Hoxie, and the Millers, despite the fact that the Millers received no distributions while Harris and Hoxie did; creating K-1 statements showing those nonexistent distributions and reporting those distributions to the IRS, while withholding issuance of tax reporting forms and K-1s to the Millers; and adjusting Claimsco's records and accounts to reflect that the Millers owed the corporation a substantial debt and received distributions that in fact the Millers never received, thereby generating an income tax liability for the Millers. The Millers assert that they asked Harris and Verchota for financial information relating to Claimsco's activities "on numerous occasions," but these requests were ignored or refused.

¶ 12    The complaint alleges that after 2002, contrary to Verchota's duty of loyalty to the Millers and his duty not to put the interests of others ahead of the Millers' interests, Verchota followed Harris's instructions to adjust Claimsco's books and records so as to maximize the Millers' financial liabilities, falsely reflect income to them without actually transferring that income, and unfairly disadvantage them compared to the other shareholders. The 2002 and 2005 tax returns that Verchota prepared for the Millers were based on this false reporting, although they did not realize it or give permission, and Verchota did not explain the Millers' tax returns to them. In addition, Verchota failed to recognize the conflict of interest between the Millers and his other clients, and failed to withdraw from representing other clients with interests adverse to the Millers'. Finally, after Harris unilaterally terminated the 2002

Agreement and Executive Agreement in March 2007, and he and Hoxie executed a new purported shareholders' agreement that completely eliminated the Millers' shares and participation in Claimsco, Verchota withdrew from serving as the Millers' accountant and continued as the accountant for Claimsco and Harris. The complaint asserts that from 2002 onward Verchota used the confidential information he had obtained from the Millers to act to their detriment. The complaint alleges that the Millers sustained damages of more than $50,000 through substantially higher taxes, "liabilities to the United States Treasury," and the costs of hiring other accountants to straighten out their financial matters.

¶ 13 Verchota filed a motion to dismiss count II of the complaint, the Millers' claim for breach of fiduciary duty, under section 2-615 of the Code. Verchota argued that the allegations of the complaint failed to state a claim for breach of fiduciary duty. On January 25, 2011, after briefing and a hearing, the trial court granted the motion. That ruling effectively dismissed Verchota from the case, as count II was the only claim against him. The trial court did not make any finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) in connection with the ruling. The trial court denied the Millers' motion to reconsider on March 8, 2011. Thereafter, the Millers settled with the other defendants, and the remaining counts of the complaint were dismissed pursuant to a settlement agreement on April 2, 2012. The Millers filed a timely notice of appeal.

¶ 14                                                    ANALYSIS

¶ 15 The sole question before us on appeal is whether the trial court erred in dismissing count II for failure to state a claim. The Millers argue that the complaint adequately states a claim for breach of fiduciary duty by Verchota, while Verchota maintains that it does not, for various reasons.

¶ 16 A motion to dismiss brought under section 2-615 of the Code attacks the sufficiency of the complaint, on the basis that, even assuming the allegations of the complaint to be true, the complaint does not state a cause of action that would entitle the plaintiff to relief. 735 ILCS 5/2-615 (West 2010); *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 8 (1992). We review *de novo* the grant of such a motion. *Khan*, 2012 IL 112219, ¶ 47. As we noted earlier, in reviewing the sufficiency of a complaint, we must accept as true all well-pleaded facts and any reasonable inferences that can be drawn from those facts, and we must view the allegations of the complaint in the light most favorable to the plaintiff. *Id.* "A cause of action should not be dismissed unless it is clearly apparent that no set of facts can be proved" consistent with the allegations that would entitle the plaintiff to recover. *Id.*

¶ 17 We begin by addressing the issue of whether and how to consider the various agreements that the Millers attached to their complaint: the 1990 Agreement, the 2002 Agreement, and the Executive Agreement. Verchota correctly points out that documents attached as exhibits to a complaint become part of the complaint. *Burton v. Airborne Express, Inc.*, 367 Ill. App. 3d 1026, 1034 (2006). Verchota argues from this that the terms of the 2002 Agreement "control over" any contradictory allegations in the complaint and doom the cause of action because it is undisputed that Verchota followed the 2002 Agreement in performing his accounting duties for Claimsco.

¶ 18    This argument misapprehends the nature of the Millers' claim, which is for breach of fiduciary duty, not breach of contract. The supreme court addressed this distinction in *Khan*, 2012 IL 112219, a case that similarly involved a section 2-615 motion to dismiss a claim for breach of fiduciary duty. There, the plaintiffs were investors who claimed to have relied upon the defendants' advice in making investments. The plaintiffs alleged, among other things, that the defendants had breached their fiduciary duty toward the plaintiffs by improperly advising them regarding prospective investments, improperly telling the plaintiffs that the investments were legal and were adequately supported by legal opinions, and failing to tell the plaintiffs that some of the defendants and other participants had undisclosed arrangements for fee-splitting or fee-sharing. *Id.* ¶ 48. In their motion to dismiss for failure to state a claim, the defendants noted that the plaintiffs had signed documents containing disclaimers and releases during the course of making the investments. (These disclaimers and releases stated that the defendants were not acting as fiduciaries with respect to the investments, that the plaintiffs had sufficient knowledge and experience to evaluate the investments, and that the plaintiffs were not relying on the defendants' advice or views.) Attaching copies of these documents to their motion to dismiss, the defendants argued that the documents contradicted the allegations of the complaint, and so the complaint could not stand. The trial court agreed and dismissed the complaint.

¶ 19    On review, the appellate court rejected this argument, holding that the documents did not control over the contrary allegations in the complaint for several reasons. First, the appellate court noted that the documents had not been attached to the complaint itself, only to the motion to dismiss. Even if the documents had been attached to the complaint, however, "the documents could only trump the allegations in the complaint if the complaint were founded on the documents." *Id.* ¶ 52. But fiduciary duties arise as a matter of law from the relationship between the parties, not from documents. *Id.* (citing *Armstrong v. Guigler*, 174 Ill. 2d 281, 287 (1996)). A claim for breach of fiduciary duty is not "founded on" a contract, even if the parties' relationship that gives rise to the fiduciary duty is based on a contract. Rather, "[a] fiduciary duty is founded upon the substantive principles of agency, contract, and equity." *Id.* (citing *Armstrong*, 174 Ill. 2d at 293-94). Thus, as the plaintiffs' claim for breach of fiduciary duty was not founded on contractual documents such as those put forward by the defendants, those documents did not control over the allegations of the complaint. *Id.* ¶ 53. Instead, "the appellate court declared that it would take all of the well-pleaded facts of the complaint as true even if the disclaimer in the *** documents appeared to contradict those factual allegations." *Id.* The supreme court approved this ruling in its own decision. *Id.* ¶ 54.

¶ 20    Applying the same principle here, we hold that the agreements attached to the Millers' complaint (including the 2002 Agreement) do not "control over" or negate the allegations of the complaint because the Millers' claim for breach of fiduciary duty is not founded upon those agreements. Rather, the claim is founded upon the assertion that Verchota stood in such a relationship to the Millers that he owed them a fiduciary duty, which encompassed duties of loyalty and honesty. The Millers allege that that relationship arose out of Verchota's oral agreement with them to serve as their personal tax accountant, and also out of the oral agreement with Claimsco (the majority shareholders of which were the Millers) to serve as its accountant. Neither the 2002 Agreement nor any of the other agreements contradicts or

-6-

otherwise overcomes these allegations. Regardless of whether the 2002 Agreement was valid or invalid, or whether as Claimsco's accountant Verchota had a duty to follow the 2002 Agreement (issues that are inappropriate for resolution in the context of a section 2-615 motion), the Millers allege that Verchota nevertheless owed *them* fiduciary duties of honesty and loyalty. Thus, to the extent that we consider the 2002 Agreement in evaluating the sufficiency of the complaint, we find that it does not dictate that the claim for breach of fiduciary duty must fail.

¶ 21     We therefore turn to the issue of whether the complaint sufficiently pleads such a claim. In *Khan*, the supreme court noted the strict limitations upon the matters that a court may consider in ruling on a section 2-615 motion to dismiss a claim for breach of fiduciary duty:

> "[W]e are not determining whether a fiduciary relationship actually existed between the *** defendants and plaintiffs. *** We determine only whether the well-pleaded factual allegations of the complaint adequately alleged that a fiduciary relationship existed and was breached by the *** defendants. In making this determination, we are limited to the factual allegations of the complaint and reasonable inferences drawn therefrom. We may not consider extraneous matters." *Id.* ¶ 49.

A claim for breach of fiduciary duty must allege two elements: a fiduciary relationship, and a breach of the duties imposed as a matter of law as a result of that relationship. *Id.* ¶¶ 49, 52. "A fiduciary relationship may arise as a matter of law from the existence of a particular relationship, such as an attorney-client or principal-agent relationship" (*Gonzalzles v. American Express Credit Corp.*, 315 Ill. App. 3d 199, 210 (2000)), or come about when "one party reposes trust and confidence in another, who thereby gains a resulting influence and a superiority over the subservient party" (*Khan*, 2012 IL 112219, ¶ 58). Examining the complaint in *Khan*, the supreme court held that the allegations there adequately stated such a claim.

¶ 22     We come to a similar conclusion here. The Millers allege that they hired Verchota to act as their personal accountant, which included drafting and filing their tax-related documents and providing them with tax advice. They therefore provided him with confidential financial information and trusted him to minimize their tax liabilities, a duty that Verchota undertook as part of their oral agreement with him. These allegations are sufficient to allege the existence of a fiduciary relationship. A fiduciary relationship carries with it "the duty of *** candor, rectitude, care, loyalty, and good faith." *Burdett v. Miller*, 957 F.2d 1375, 1381 (7th Cir. 1992). An agent must not place himself in a position which is adverse to that of his principal during the existence of the agency. *County of Cook v. Barrett*, 36 Ill. App. 3d 623, 628 (1975). Further,

> "the law strictly requires from an agent honesty and loyalty to the interests of the principal. This duty prohibits an agent from not only acquiring personal interests adverse to those of the principal, but also from dealing independently of the interests of the principal to the agent's personal gain in the subject matter of the agency. [Citation.]
>
>     An agent, thus, must keep the principal informed on all matters of which he has knowledge that pertain to the subject matter of the agency. The agent breaches this duty not only when he acts adversely to the principal's interest, but also when he conceals

facts that involve the principal's advantage." *Beaton & Associates, Ltd. v. Joslyn Manufacturing & Supply Co.*, 159 Ill. App. 3d 834, 842-43 (1987), *superseded by statute on other grounds per Royal Imperial Group, Inc. v. Joseph Blumberg & Associates, Inc.*, 240 Ill. App. 3d 360, 365 (1992).

¶ 23　　The complaint adequately alleges that Verchota breached his fiduciary duty toward the Millers. Specifically, the complaint alleges that, beginning in 2002, Verchota: assisted Harris and Hoxie in gaining control of Claimsco to the detriment of the Millers; placed the interests of other clients (Harris and perhaps Hoxie and Claimsco) ahead of theirs in making distributions from Claimsco; failed to honor his agreement with the Millers to use the 1990 Agreement in structuring Claimsco's financial accounts and records; used the Millers' personal financial information to harm them; failed to inform the Millers about any of this; and affirmatively acted to keep financial information about Claimsco and necessary tax-related documents from the Millers. The Millers also allege that Verchota's conduct caused them damages of more than $50,000. It might be that, at trial, the Millers are unable to prove some or even all of these allegations. At this point, however, we must take all of these allegations as true. *Khan*, 2012 IL 112219, ¶ 47. Taken as true, the allegations state a claim for breach of fiduciary duty. We therefore reverse the trial court's dismissal of count II of the complaint.

¶ 24　　Verchota raises a variety of arguments against this outcome, but all of them lack merit. Verchota first argues that the Millers "abandoned" their contention that the 2002 Agreement is invalid for lack of consideration or because it was the product of coercion and duress, in that the complaint does not contain any allegations relating to this contention. However, this is simply incorrect. Paragraphs 28 and 29 of the complaint allege no consideration, and paragraphs 27, 32, and 33 allege coercion and duress. Similarly, Verchota's assertion that the complaint does not allege that he and the Millers orally agreed that he would follow the 1990 Agreement is incorrect. (Paragraph 59 so alleges.)

¶ 25　　Other arguments raised by Verchota go far beyond the four corners of the complaint and thus are not appropriate for resolution here. For instance, Verchota argues that the 2002 Agreement was valid, contrary to the Millers' contentions that it lacked consideration and was the product of coercion and duress. Verchota also argues that, even if the 2002 Agreement was unenforceable initially, the Millers ratified it by accepting the benefits of the Executive Agreement. However, these are substantive arguments directed to the merits of the complaint, rather than arguments that point out some deficiency in the pleading. As such, we cannot consider them here. See *Khan*, 2012 IL 112219, ¶¶ 55-56 (court must restrict its consideration to the allegations of the complaint; moreover, where key facts relating to the cause of action are disputed, the resolution of the issues should be deferred until after "discovery and the development of a proper evidentiary record," and thus it would be inappropriate to convert a section 2-615 motion to a section 2-619 motion or a motion for summary judgment). In a similar vein, Verchota argues that we should find the Millers' contentions about the purported invalidity of the 2002 Agreement forfeited because the Millers did not cite case law about consideration or coercion in their appellate brief, but this argument is misguided in that substantive issues such as the validity of the 2002 Agreement are not before us in this appeal.

¶ 26    Verchota also raises arguments that must fail because they do not relate to the claim asserted here, which is a claim for breach of fiduciary duty. For instance, Verchota argues that he had no duty to advise the Millers regarding the validity or invalidity of the 2002 Agreement because he is an accountant, not a lawyer. However, the Millers have not claimed that Verchota had any such duty. Rather, they assert that he had the duty either to continue following the 1990 Agreement (which they assumed he was doing) or to tell them that he was following the 2002 Agreement. Moreover, they assert that Verchota should have recognized that following the 2002 Agreement would require him to place the interests of Harris and Hoxie over the interests of the Millers and that this conflict of interest required him to stop providing accounting services not only to the Millers but also to Harris and Claimsco. These allegations are unaffected by the validity or invalidity of the 2002 Agreement.

¶ 27    Similarly, Verchota argues that he had no legally enforceable contractual obligation to ignore the 2002 Agreement, because any such obligation would run counter to his professional duties and would get him in trouble under the Illinois Public Accounting Act (225 ILCS 450/20.01(a)(14) (West 2010)). Again, however, this argument treats the Millers' claim as one for breach of contract, which it is not. Verchota has not identified any case law suggesting that the Illinois Public Accounting Act excuses an accountant from his fiduciary duties.

¶ 28    Verchota also argues that the allegations relating to his oral retention agreements with the Millers and Claimsco are not pleaded with adequate specificity. However, although a plaintiff may not prevail on a claim for breach of an oral contract unless the terms of the contract are proved with specificity, the exact terms of the alleged oral agreements need not be included in the complaint. Tellingly, almost all of the cases cited by Verchota in this section of his brief deal with whether an oral contract was adequately proved *at trial*, not whether it was sufficiently alleged. The sole exception is *Abrams v. Illinois College of Podiatric Medicine*, 77 Ill. App. 3d 471, 476 (1979), in which the allegations of an oral contract were extremely vague, stating only that the defendant there told the plaintiff not to worry about the difficulties he was having and " 'that everything would be done to assist [him], including figuring out some way to help him.' " While we agree with the *Abrams* court's conclusion that those allegations were, as a matter of law, too vague and indefinite to give rise to any oral contract, the same cannot be said of the allegations here. In this case, the complaint alleges that the Millers and Claimsco (acting through the Millers) retained Verchota to provide professional tax accounting services and tax advice to them, and further provides several specifics about those oral retainer agreements. This is sufficient to allege the existence and general terms of the oral retainer agreements; further details about the exact terms of those contracts may be obtained through discovery. See *Khan*, 2012 IL 112219, ¶ 47 ("A cause of action should not be dismissed unless it is clearly apparent that no set of facts can be proved" consistent with the allegations that would entitle the plaintiffs to recover.). This is especially true in view of the fact that this is an action for breach of fiduciary duty, not an action for breach of contract.

¶ 29    Finally, Verchota argues that the Millers cannot bring a claim for professional malpractice, because they placed themselves in a "questionable" situation (allegedly running up a large debt to Claimsco and then signing the 2002 Agreement) and then sought

-9-

professional help to escape that situation. See *Makela v. Roach*, 142 Ill. App. 3d 827, 832 (1986) (court would dismiss plaintiff's claim for professional malpractice when the matter with which plaintiff sought professional assistance was fraudulent as a matter of law). Once again, however, this argument rests on a misunderstanding of the Millers' claim, which is not for professional malpractice but for breach of fiduciary duty. (Although the phrase "accountant malpractice" appears in the title of count II, we look to the substance of the allegations rather than the title. See *Wabash County, Illinois v. Illinois Municipal Retirement Fund*, 408 Ill. App. 3d 924, 932 (2011).) Moreover, the allegations of the complaint, which must be construed in the light most favorable to the Millers at this point (*Khan*, 2012 IL 112219, ¶ 47), do not support Verchota's contentions: the Millers clearly allege that they sought Verchota's accounting assistance and entered into a fiduciary relationship with him long before 2002. It is this relationship, not the Millers' subsequent actions, that is relevant to their claim. Finally, this argument, which is based on the principle of unclean hands, is an affirmative defense that rests here upon disputed facts (see *Bucci v. Rustin*, 227 Ill. App. 3d 779, 784 (1992)), and thus it is not appropriate for resolution within the strictures of a section 2-615 motion to dismiss (*Khan*, 2012 IL 112219, ¶¶ 55-56).

¶ 30                                    CONCLUSION

¶ 31        For all of these reasons, we reverse the January 25, 2011, order of the circuit court of Lake County dismissing count II of the fourth amended complaint, and remand the case for further proceedings consistent with this opinion.

¶ 32        Reversed and remanded.