2016 IL App (2d) 150286
No. 2-15-0286
Opinion filed January 22, 2016

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| CITIMORTGAGE, INC., Assignee of Mortgage Electronic Registration Systems, Inc., as Nominee for Lehman Brothers Bank, FSB, | ) ) ) ) | Appeal from the Circuit Court of Du Page County. |
| | ) | |
| Plaintiff-Appellant and Cross-Appellee, | ) ) | |
| v. | ) ) | No. 10-CH-4540 |
| KARYN PARILLE and ANTHONY PARILLE, | ) ) ) | |
| Defendants-Appellees and Cross-Appellants | ) ) ) ) | |
| (MB Financial Bank, N.A.; Centrust Bank, N.A.; Sargon Shiba; David Hansel and Victoria Hansel; Joseph Puthenpurakal; Richard Bernardini; Robert Gresko/Rush Enterprises; The State of Illinois; Jana Bode; Robert Gresko and Myra Ann Gresko; Downers Grove National Bank; Capital Development Fund, L.L.C.; Nonrecord Claimants; Unknown Tenants; and Unknown Owners, Defendants). | ) ) ) ) ) ) ) ) ) ) ) ) ) | Honorable Bonnie M. Wheaton, Judge, Presiding. |

_____

PRESIDING JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Jorgensen and Spence concurred in the judgment and opinion.

**OPINION**

¶ 1     This appeal involves the attempt of the plaintiff, CitiMortgage, Inc., to foreclose upon the home of the defendants, Karyn and Anthony Parille, on the basis of a mortgage that turned out to be ineffective as a matter of law.  After the Parilles raised this defense, CitiMortgage asserted

other claims against the Parilles, including equitable lien, unjust enrichment, and fraud. The circuit court of Du Page County dismissed the third amended complaint with prejudice and denied leave to file a fourth amended complaint. CitiMortgage appeals. The circuit court also denied the Parilles' motions to order the release of the mortgage from their title and for attorney fees; the Parilles have filed a cross-appeal from that denial. We affirm in part and reverse in part, and remand.

¶ 2                                 BACKGROUND

¶ 3     In December 2000, the Parilles, who are married to each other, bought a home at 214 Forrest Trail in Oak Brook. The Parilles took title as tenants by the entirety. To buy the home, they took out a loan of $240,000, which was secured by a mortgage on the property. Both Karyn and Anthony were identified as borrowers in the note, and both signed the mortgage.

¶ 4     In March 2001, the Parilles refinanced their home loan. They borrowed $243,000 from Bank One, again secured by a mortgage. Both of the Parilles signed the note and the mortgage. The following year, the Parilles took out a home equity loan in the amount of $165,000 from Bank One.

¶ 5     In May 2003, the Parilles again refinanced, this time with Lehman Brothers Bank (Lehman). Both of the Parilles signed the note, which memorialized a loan of $475,000 (First Lehman Note). The note was secured by a mortgage (First Lehman Mortgage). Although Karyn was identified in the mortgage as the only "borrower," both she and Anthony initialed every page of the mortgage, and they both signed the mortgage without qualification. The proceeds of the loan went primarily to pay off the Bank One mortgage and the home equity loan.

¶ 6     Only three months later, on August 20, 2003, Lehman entered into a new loan with Karyn. The loan was for $481,200, and the proceeds were used to pay off the First Lehman

Note.  The note for the new loan (Second Lehman Note) identified Karyn as the only borrower, and only Karyn signed and initialed the Second Lehman Note.

¶ 7    The mortgage securing that loan (Second Lehman Mortgage), like the First Lehman Mortgage, was prepared by Aurora Loan Services, Inc., at the direction of Lehman.  It listed Karyn as the only "borrower" and stated that "Borrower is the mortgagor under this Security Instrument."  Karyn initialed every page of the Second Lehman Mortgage.  Anthony's initials do not appear on any of the pages.  One of the provisions in the Second Lehman Mortgage stated, in printed text, as follows:  "any Borrower who co-signs this Security Instrument but does not execute the note[] is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument."  On the last page of the Second Lehman Mortgage, printed text read: "BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument ***."  Karyn signed on the line below this statement.  On the line below that, Anthony signed his name.  Typewritten text directly below Anthony's signature read:  "Anthony Parille is signing this document for the sole purpose of waving [*sic*] homestead rights."  It is undisputed that the Parilles did not insert (or cause to be inserted) the typewritten text below Anthony's signature; rather, it appears that this language was inserted by Aurora Loan Services.

¶ 8    The HUD-1 Settlement Statement given to the Parilles on August 20, 2003, listed Karyn as the sole borrower and was signed solely by Karyn.  On September 12, 2003, as a result of the refinancing, the First Lehman Mortgage was released.

¶ 9    In November 2008, the Parilles stopped paying the Second Lehman Mortgage.  Lehman assigned the Second Lehman Note and the Second Lehman Mortgage to CitiMortgage on July 16, 2010.

¶ 10    On August 12, 2010, CitiMortgage filed a one-count foreclosure action against the Parilles and various other parties with possible interests in the property (none of whom are before us in this appeal). The action was based upon the Second Lehman Note and Mortgage, and both of these (along with the assignment to CitiMortgage) were attached to the complaint. Although the Parilles first appeared *pro se*, they later obtained the services of several lawyers. In March 2013, an agreed judgment of foreclosure was entered. In August 2013, shortly before the scheduled date of the judicial sale, the Parilles obtained a new lawyer. They then filed a motion to vacate the judgment of foreclosure on the basis that the Second Lehman Mortgage was not a valid encumbrance on the property, because the property was held by both of the Parilles as tenants by the entirety, but only Karyn had signed the mortgage—Anthony's signature was only for the purpose of waiving his homestead rights. The trial court granted the motion and vacated the judgment of foreclosure.

¶ 11    Thereafter, CitiMortgage filed an amended complaint, followed closely by a second amended complaint that corrected typographical errors in the amended complaint. The second amended complaint asserted six claims:  foreclosure of the Second Lehman Mortgage (count I); reformation of the mortgage to nullify the typewritten language below Anthony's signature (count II); equitable lien (count III); unjust enrichment, against Anthony only (count IV); fraud, against Karyn (count V); and fraud, against Anthony (count VI).

¶ 12    The Parilles filed a combined motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2012)). The Parilles argued that counts I, IV, V, and VI should be dismissed under section 2-619 of the Code (735 ILCS 5/2-619 (West 2102)), based upon affirmative matters. As to count I, the affirmative matter was their ownership of the property as tenants by the entirety, and the existence of various statutes bearing on the effectiveness of the Second Lehman Mortgage. They noted that, under section 1c of the

Joint Tenancy Act (765 ILCS 1005/1c (West 2012)), "[n]o deed, contract for deed, mortgage, or lease of homestead property held in tenancy by the entirety shall be effective unless signed by both tenants." They also called attention to section 3-114 of the Uniform Commercial Code (810 ILCS 5/3-114 (West 2012)), which codifies the "typewriter rule," providing among other things that, "[i]f an instrument contains contradictory terms, typewritten terms prevail over printed terms." They argued that the Second Lehman Mortgage was ineffective because it was not signed by both of the Parilles: by the express terms of the typewritten portion of the mortgage, Anthony's signature was only for the purpose of waiving his homestead rights and did not operate to encumber his undivided interest in the property. Thus, they argued, CitiMortgage could not foreclose upon the property and count I should be dismissed.

¶ 13    Further, they argued that count IV was barred by the applicable statute of limitations, which was five years for unjust enrichment claims. 735 ILCS 5/13-205 (West 2012). Because the alleged enrichment to Anthony occurred in 2003 (when the proceeds of the Second Lehman Note were used to pay off the First Lehman Note and cause the release of the First Lehman Mortgage that encumbered his interest in the property), CitiMortgage was required to raise its claim of unjust enrichment no later than 2008. However, CitiMortgage did not file suit until 2010. As count IV was untimely, it should be dismissed. The statute of limitations for fraud was also five years (*id.*), and thus, they argued, counts V and VI should also be dismissed.

¶ 14    As to the remaining counts, the Parilles sought dismissal pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2012)). The Parilles argued that CitiMortgage's allegations were insufficient as a matter of law because they were contradicted by the plain language of the Second Lehman Mortgage (attached and thus incorporated into the complaint), which showed that Anthony's interest in the property had not been encumbered. The Parilles argued that, because the best indication of the intent of the parties to a contract was the language of that

contract, CitiMortgage could not assert, in its count II claim for reformation of the contract, that the parties intended for the Parilles to encumber their entire interest in the property but made a mutual mistake of fact. As to count III, asserting an equitable lien upon the property, CitiMortgage had alleged that, because the proceeds of the Second Lehman Note were used to satisfy a debt and release a lien upon which Anthony was liable (the First Lehman Note and Mortgage), the Second Lehman Mortgage should be held to encumber both Karyn's and Anthony's interests in the property. The Parilles argued that there was no equitable basis for relieving CitiMortgage of the consequences of Lehman's actions when Lehman knew that the property was held by both of the Parilles as tenants by the entirety and Lehman's agent drafted the Second Lehman Note and Mortgage, including the typewritten portion. Finally, as to the fraud claims (counts V and VI), CitiMortgage had not identified any misrepresentation allegedly made by either of the Parilles and could not show that either of them acted with the intent to defraud Lehman or its successor.

¶ 15 After briefing and oral argument, the trial court ruled. It dismissed counts I and IV with prejudice on the grounds that the Second Lehman Mortgage was not effective to encumber the property and that any unjust enrichment claim was untimely. It dismissed the remaining counts without prejudice, permitting CitiMortgage to replead them if it wished. Following an unsuccessful motion to reconsider, CitiMortgage did so.

¶ 16 CitiMortgage's third amended complaint alleged the same six claims raised in its prior complaint. As to counts I and IV, the third amended complaint stated that they were realleged solely to preserve them for appeal. The third amended complaint contained the following changes from the previous complaint. As to count I, all of the previous complaints had stated, in the "form" portion of the foreclosure claim required by section 15-1504 of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1504 (West 2010)), that the sole "mortgagor" was Karyn, but

in the third amended complaint, the "mortgagor" was identified as Karyn and Anthony. (However, the amended and second amended complaints had also contained general allegations that both Karyn and Anthony agreed to grant a mortgage on the property and that both Karyn and Anthony signed the mortgage, so the change to count I's form portion merely conformed that allegation with the general allegations.) As to count II, CitiMortgage added allegations that both Lehman and Anthony intended for Anthony to encumber his interest in the property by signing the Second Lehman Mortgage and requested that the Second Lehman Mortgage be reformed to include an acknowledgment of that intent. In count III, CitiMortgage alleged that Anthony owed it a duty (because its predecessor Lehman paid off the First Lehman Mortgage, which had encumbered his interest in the property), and that this duty should give rise to an equitable lien. In the fraud counts, CitiMortgage alleged that Karyn "knowingly signed" the Second Lehman Mortgage without intending to encumber the property, and that she "made the false statement" with the intention that Lehman rely on it; it alleged further that Anthony signed the Second Lehman Mortgage "as a co-signor and co-mortgagor" but did not intend to convey his interest in the property.

¶ 17    The Parilles filed a combined motion to dismiss the third amended complaint pursuant to section 2-619.1, raising many of the same arguments as in their previous motion. They argued that the allegations of count II were still refuted by the express language of the mortgage. As to count III, they argued that CitiMortgage had not identified any legally cognizable source of the alleged duty owed by Anthony: CitiMortgage could not claim that Anthony caused the allegedly inequitable situation, given the fact that Lehman knew how the property was held and yet its agent drafted a note and mortgage identifying Karyn as the sole borrower and mortgagor. As to the fraud counts, CitiMortgage still had not identified any false statement made by either of the Parilles and those counts were still barred by the statute of limitations.

¶ 18    After briefing and a hearing, the trial court again dismissed the complaint, this time with prejudice.  As to count I, it reasoned that, by the express terms of the Second Lehman Mortgage, Anthony was not a mortgagor and thus the mortgage was ineffective, and it found that none of the remaining counts (counts II, III, IV, V, and VI) stated a cognizable claim.  In closing, the trial court commented that it did not believe that CitiMortgage was completely out of luck, as it might have a cause of action at law against Karyn on the Second Lehman Note, but any such claim could not be heard in the current case, which had been brought in chancery.

¶ 19    Over the following few weeks, the Parilles filed two motions:  a motion seeking attorney fees pursuant to section 15-1510(a) of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1510(a) (West 2012)) and a motion to clarify or amend the judgment to require CitiMortgage to release the lien imposed by the ineffective Second Lehman Mortgage.  CitiMortgage also filed two motions: a motion to reconsider and a motion for leave to file a fourth amended complaint that would add two more claims against the Parilles, for equitable subrogation and conventional subrogation.  On February 25, 2015, the trial court denied all of the motions.  CitiMortgage filed an appeal from the trial court's order dismissing the third amended complaint and its order denying reconsideration and leave to file a fourth amended complaint.  The Parilles filed a cross-appeal from the denial of their motions for attorney fees and to clarify or amend the judgment.

¶ 20                                  ANALYSIS

¶ 21                                    Appeal

¶ 22    We begin by considering CitiMortgage's appeal from the dismissal of its third amended complaint and the denial of leave to file a fourth amended complaint.

¶ 23    A motion to dismiss brought under section 2-615 of the Code attacks the sufficiency of the complaint, on the basis that, even assuming the allegations of the complaint to be true, the complaint does not state a cause of action that would entitle the plaintiff to relief.  735 ILCS 5/2-

615 (West 2012); *Vitro v. Mihelcic*, 209 Ill. 2d 76, 81 (2004). A section 2-619 motion to dismiss likewise assumes the allegations of the complaint to be true, but it asserts an affirmative defense or other matter that would defeat the plaintiff's claim. 735 ILCS 5/2-619 (West 2012); *Nielsen-Massey Vanillas, Inc. v. City of Waukegan*, 276 Ill. App. 3d 146, 151 (1995). Pursuant to section 2-619.1 of the Code, a party may file a combined motion attacking various counts of a complaint under both sections 2-615 and 2-619. 735 ILCS 5/2-619.1 (West 2012). Under either section, a claim should not be dismissed on the pleadings "unless it is clearly apparent that no set of facts can be proved which will entitle [the] plaintiff to recover." *Nielsen-Massey Vanillas*, 276 Ill. App. 3d at 151. We review the dismissal of a complaint pursuant to either section *de novo*. *Wallace v. Smyth*, 203 Ill. 2d 441, 447 (2002). In its appeal, CitiMortgage addresses the viability of each count in numerical order, and we will do the same.

¶ 24    The trial court dismissed count I, the foreclosure claim, pursuant to section 2-619 of the Code. The trial court correctly observed that, in assessing the validity of a claim, the exhibits attached to a complaint must be considered as part of that complaint. *Burton v. Airborne Express, Inc.*, 367 Ill. App. 3d 1026, 1034 (2006). Further, if the allegations in a pleading conflict with the facts disclosed in an exhibit, the exhibit controls. *Id*. Where an attachment is a contract or other instrument, the proper construction of that contract is a matter of law. *Gallagher v. Lenart*, 226 Ill. 2d 208, 219 (2007). "The primary objective in construing a contract is to give effect to the intent of the parties." *Id*. at 232. The language of a contract, given its plain and ordinary meaning, is the best indication of the parties' intent. *Id*. at 233. "Moreover, because words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others." *Id*. We review the trial court's interpretation of a contract *de novo*. *Id*. at 219.

¶ 25    Here, the Second Lehman Mortgage was attached to the complaint as the instrument giving rise to the foreclosure claim.  The trial court correctly construed the Second Lehman Mortgage as having been made solely by Karyn:  the first page identified Karyn as the only "Borrower" and further stated that "Borrower is the mortgagor under this Security Instrument"; only Karyn initialed every page; and on the last page, only Karyn signed without qualification. Although Anthony also signed the last page, his signature was qualified by the typewritten text stating that he was signing solely for the purpose of waiving his homestead rights.  There is no reason not to give effect to the typewritten qualification:  it merely reinforces the other expressions of intent that Karyn was to be the sole mortgagor.  Anthony did not sign the mortgage as a mortgagor.

¶ 26    Thus, although CitiMortgage alleged that Anthony intended to, and did, sign the Second Lehman Mortgage as a mortgagor, this allegation is contradicted by the plain language of the instrument itself.  CitiMortgage urges that its allegations must, at this stage, be taken as true, but it ignores the law that an instrument attached to a complaint must be considered part of the complaint and, if the allegations of the complaint conflict with the facts disclosed in that instrument, the instrument controls.  *Burton*, 367 Ill. App. 3d at 1034.  CitiMortgage also argues that intent is a question of fact, but the issue of the parties' intent when signing a contract is to be determined solely from the language of that contract, unless the contract is ambiguous. *Gallagher*, 226 Ill. 2d at 233.

¶ 27    CitiMortgage argues that the instrument is ambiguous, because the intent that Anthony convey his interest in the property is inferable from the provision stating that "any Borrower who co-signs this Security Instrument but does not execute the note[] is co-signing this Security Instrument *** to mortgage, grant and convey the co-signer's interest in the Property." However, this provision is not applicable to Anthony because, by the express terms of the

instrument, he is not a "Borrower." This conclusion is supported by two facts: Anthony is not identified as a borrower in the Second Lehman Mortgage, and, as a factual matter, he is not a borrower under the Second Lehman Note, which was incontestably executed only by Karyn. CitiMortgage argues that the parties' intent to encumber "the entire property" is shown by the fact that the address and legal description stated in the Second Lehman Mortgage are for the entire property. (It also argues that the amount of the mortgage reflects the value of the entire property at the time of the refinancing, but CitiMortgage has not included in the complaint or its exhibits any allegation or facts regarding the 2008 value of the property.) However, as Karyn has an undivided interest in "the entire property," not merely one half of it, these facts are not inconsistent with an interpretation of the Second Lehman Mortgage as having been executed by Karyn alone as the sole mortgagor. Accordingly, none of these provisions demonstrate any ambiguity in the Second Lehman Mortgage, and the construction of that instrument is an issue of law, not one of fact.

¶ 28    CitiMortgage's final argument regarding count I is that the Parilles did not raise any "affirmative matter" that would defeat their complaint, as required by section 2-619(a)(9) of the Code. 735 ILCS 5/2-619(a)(9) (West 2012). This argument misunderstands the nature of "affirmative matter," which need not be in the form of evidence such as an affidavit but may be a legal matter that operates to defeat the claim. See *Barber-Colman Co. v. A&K Midwest Insulation Co.*, 236 Ill. App. 3d 1065, 1072 (1992) (section 2-619 motion need not be accompanied by supporting material if the affirmative matter appears on the face of the complaint or can be determined as a matter of law). Here, the "affirmative matter" was the fact that the title to the property was held by both Anthony and Karyn by the entirety (shown by the deed attached as an exhibit to the complaint); the fact that only Karyn had signed the Second Lehman Mortgage as a mortgagor (shown by the face of that instrument, which was also attached

to the complaint); and section 1c of the Joint Tenancy Act, which provides that "[n]o deed, contract for deed, mortgage, or lease of homestead property held in tenancy by the entirety shall be effective unless signed by both tenants." 765 ILCS 1005/1c (West 2012). Under these circumstances, no affidavit was necessary. The trial court did not err in dismissing count I of the complaint.

¶ 29   We next turn to count II, the claim for reformation, the sufficiency of which was challenged by the Parilles under section 2-615 of the Code. A court may reform a contract when the written agreement does not reflect the parties' intent. Such a claim rests on the theory that the parties reached an agreement but then erred somehow (by mutual mistake of fact, or by mistake on one side and fraud on the other) in reducing that agreement to writing, with the result that the writing fails to reflect the parties' agreement. *United City of Yorkville v. Village of Sugar Grove*, 376 Ill. App. 3d 9, 25 (2007). To plead a claim for reformation, a plaintiff must allege: "(1) the existence and substance of an agreement between the parties and the identity of the parties to the agreement; (2) that the parties agreed to reduce their agreement to writing; (3) the substance of the written agreement; (4) that a variance exists between the parties' original agreement and the writing; and (5) the basis for reformation (*e.g.*, mutual mistake)." *Briarcliffe Lakeside Townhouse Owners Ass'n v. City of Wheaton*, 170 Ill. App. 3d 244, 252 (1988). For the purposes of reformation of a written instrument, a mutual mistake exists "when the contract has been written in terms which violate the understanding of both parties." *In re Marriage of Johnson*, 237 Ill. App. 3d 381, 394 (1992). "A mutual mistake is one that is common to the parties such that each labors under the same misconception. In such a case, the parties are in actual agreement, but the instrument to be reformed, in its present form, does not express the parties' real intent." *Wheeler-Dealer, Ltd. v. Christ*, 379 Ill. App. 3d 864, 869 (2008).

¶ 30    The Parilles argue that CitiMortgage failed to allege any facts showing a prior agreement between themselves and Lehman that was not reflected in the Second Lehman Mortgage. However, we must read the allegations of the complaint in the light most favorable to the plaintiff. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86 (1996). Count II alleges that, because the Second Lehman Mortgage resulted in the release of the First Lehman Mortgage, Lehman "would not have agreed to" enter into the Second Lehman Note unless the Second Lehman Mortgage also encumbered the interests of both of the Parilles. This is, in essence, an allegation that Lehman intended the Second Lehman Mortgage to encumber the interests of both Parilles in the property. (Although this type of allegation might be unusual, the Parilles have not cited any case law showing that CitiMortgage cannot allege the intent of someone other than itself in this way.) Further, CitiMortgage alleged that the Parilles intended that both Karyn's and Anthony's interests in the property would be encumbered by the Second Lehman Mortgage. The fact that, as discussed above, this allegation is contradicted by the express language of the instrument itself is not fatal to a claim for reformation. Because the thrust of such a claim is that the instrument's language does not accurately reflect the parties' agreement, parol evidence may be introduced on the issue of the parties' intent, "even when the instrument to be reformed is clear and unambiguous on its face." *Beynon Building Corp. v. National Guardian Life Insurance Co.*, 118 Ill. App. 3d 754, 760 (1983). Construing count II liberally, we find that it adequately alleges that the Parilles and Lehman agreed that Lehman would loan the Parilles $481,200 that would be used to pay off the First Lehman Mortgage, in return for a mortgage secured by both of the Parilles' interests in the property.

¶ 31    The Parilles argue that the allegations are insufficient in another way, however, because they show that Lehman and/or CitiMortgage was mistaken about the effect of the Second Lehman Mortgage, which is a mistake of law, not a mistake of fact. They contend that

reformation is available only for mutual mistakes of fact, not law. However, the distinction between mistakes of fact and mistakes of law has been eroded in recent years, an erosion reflected both in Illinois case law and various treatises on contract law. See, *e.g.*, *Harbaugh v. Hausman*, 210 Ill. App. 3d 715, 721-22 (1991) (tracing the development of the law in this area and citing Illinois Supreme Court cases as well as treatises on contract law); see also *In re Estate of Hurst*, 329 Ill. App. 3d 326, 336 (2002) (reformation was appropriate remedy on facts of case even where mistake was one of law). These authorities hold that, in appropriate circumstances, equity may allow the reformation of a contract even when the mistake is one of law. As such circumstances require the presentation of proof, the dismissal of CitiMortgage's reformation claim at the pleading stage was not warranted. Accordingly, the trial court erred in dismissing count II with prejudice pursuant to section 2-615 of the Code.

¶ 32    We pause to note that our reversal of the dismissal of count II should not be taken to suggest that CitiMortgage will be able to prove its claim for reformation. "There is a presumption that a written instrument conforms to the intention of the parties thereto ***." *Klemp v. Hergott Group, Inc.*, 267 Ill. App. 3d 574, 584 (1994). Thus, "[t]o succeed in an action for contract reformation, a party must show [the elements of the claim] by strong, clear, and convincing evidence." *Alliance Syndicate, Inc. v. Parsec, Inc.*, 318 Ill. App. 3d 590, 603 (2000). Further, given that the defect in the Second Lehman Mortgage appears on the face of the recorded documents (that mortgage and the warranty deed to the property), arguments may be raised about CitiMortgage's diligence in deciding to accept the assignment from Lehman that could affect CitiMortgage's ability to assert this claim. As no such arguments are presently before us, however, we express no opinion on the ultimate merits of the claim. We therefore turn our attention to count III.

¶ 33    Count III asserts a claim for an equitable lien.  The imposition of an equitable lien is a remedy for a debt that cannot be legally enforced, but which ought in right and fairness to be recognized.  *Hargrove v. Gerill Corp.*, 124 Ill. App. 3d 924, 930-31 (1984).  An equitable lien can arise despite the absence of an express agreement by the defendant to be liable for the debt. *Id*. at 931.  For example, an equitable lien has been imposed upon land when a tenant has made improvements on that land.  *Id*.  In order to assert an equitable lien, a plaintiff must allege (1) "a debt, duty or obligation" owed to it by the defendant, and (2) the existence of a *res*—an asset that in some way is particularly related to the debt or obligation.  *Id*.

¶ 34    Here, CitiMortgage seeks the imposition of an equitable lien on the property.  The Parilles sought dismissal of this claim under section 2-615 of the Code on the basis that CitiMortgage has not alleged any facts that would give rise to a debt, duty, or obligation by Anthony toward CitiMortgage.

¶ 35    Count III alleges that Anthony received a benefit from Lehman—Lehman paid off the First Lehman Mortgage.  (For the purposes of our analysis here, we assume without deciding that the First Lehman Mortgage was a legally valid mortgage that encumbered both Anthony's and Karyn's interests in the property).  CitiMortgage also alleged that Lehman would not have done this unless it was to receive a similar mortgage in return.  It argues that these allegations are enough to give rise to a duty by Anthony toward CitiMortgage.

¶ 36    Illinois case law does not directly answer the question whether these allegations sufficiently plead the existence of a duty or obligation by Anthony toward Lehman and CitiMortgage as its successor.  As noted above, the typical example of a circumstance giving rise to such a duty is where one party has improved land belonging to another.  *Id*.  That situation is not present here.  The facts in *W.E. Erickson Construction, Inc. v. Congress-Kenilworth Corp.*, 132 Ill. App. 3d 260 (1985), are somewhat similar to those in the case before us, although it is

not on all fours. There, a property owner and a builder entered into a contract to construct a water slide on the property. In return for building the water slide, the owner agreed to deed the property to the builder; when the slide was built and the owner had paid the builder the agreed price, the builder was to transfer the property back to the owner. *Id*. at 270. The use of the property as security failed when it was learned that the putative owner did not, in fact, own the property prior to deeding it to the builder. The court held that, in these circumstances, the builder was entitled to an equitable lien on the property in the amount of the value of the improvements to the property. *Id*. Although the fact of an unexpectedly invalid security interest is similar in both *W.E. Erickson* and this case, *W.E. Erickson* is distinguishable in that there the plaintiff had made improvements to the subject property, making that case more like the commonly cited scenario in which an equitable lien is granted. See *id*. (stating that an equitable lien was properly imposed because, "when the security failed, [the builder] in effect was expending its own money for the improvement of [the] property"). We are reluctant to rely on *W.E. Erickson* as supporting the existence of a duty or obligation in the circumstances present here, where no improvement to the property has been made.

¶ 37    Of the three cases cited by CitiMortgage in its arguments regarding equitable lien, one is an unreported Illinois case (and thus we ignore CitiMortgage's citation of it), and another involves very different facts and an equitable lien asserted to have arisen out of a contract, a different creature than the extra-contractual equitable lien sought here. See *Deutsche Bank National Trust Co. v. Dolci*, 2012 IL App (2d) 111275-U; *La Salle National Trust, N.A. v. Village of Westmont*, 264 Ill. App. 3d 43 (1994). The remaining case, *Shchekina v. Washington Mutual Bank*, No. 08 C 6094, 2012 WL 3245957 (N.D. Ill. Aug. 7, 2012), is an unpublished federal case. "Unpublished federal decisions are not binding or precedential in Illinois courts." *King's Health Spa, Inc. v. Village of Downers Grove*, 2014 IL App (2d) 130825, ¶ 63. However,

"nothing prevents this court from using the same reasoning and logic as that used in an unpublished federal decision," should it so choose. *Id. Shchekina* was a quiet title case in which the homeowner's signature appeared to have been forged on the last few mortgages (all of which were executed for the purposes of refinancing). The trial court held that, through equitable subrogation, the bank holding the last mortgage could step into the shoes of the bank that held the most recent authentic mortgage. *Shchekina*, 2012 WL 3245957, at *6. Once the bank was equitably subrogated to that mortgage, the plaintiff must be viewed as owing the bank a debt in the amount of that mortgage. *Id*. This satisfied the requirement of a debt or duty owed by the homeowner, and thus the bank could assert an equitable lien on the mortgaged property in the amount of the authentic mortgage. *Id*. Otherwise the homeowner would be unjustly enriched by having that mortgage paid off without the substitution of a new valid mortgage.

¶ 38    We find *Shchekina* well reasoned and persuasive on the issue of whether the invalidity of a later mortgage may potentially support a claim for an equitable lien. However, there is an important distinction between *Shchekina* and this case:  in *Shchekina*, the bank sought, among other things, to be equitably subrogated to the most recent valid mortgage as an alternative to disproving the homeowner's allegations of forgery. This equitable subrogation claim was the basis for the court's finding that the homeowner owed the bank a duty. Moreover, by seeking equitable subrogation to a prior mortgage, the bank implicitly agreed to accept an equitable lien in a lesser amount (the amount of the last valid mortgage rather than the higher amount of the newest mortgage) if the homeowner proved that the later mortgages were forged. *Id*.

¶ 39    Here, by contrast, CitiMortgage's third amended complaint included no request for equitable subrogation. Further, although CitiMortgage sought leave to file a fourth amended complaint that included an alternative claim titled "equitable subrogation," that claim (count VII) did not sufficiently state a claim for equitable subrogation on the First Lehman Mortgage (the

most recent presumptively valid mortgage on the property). Rather, count VII of the proposed fourth amended complaint contained a contradictory and confusing hodgepodge of allegations: that Anthony obtained a benefit in the amount of $481,200 (the amount of the *Second* Lehman Note) because the proceeds of that note were used to pay off the debt secured by the First Lehman Mortgage (*i.e.*, $475,000); that CitiMortgage was entitled to be equitably subrogated into the "first lien position enjoyed by Lehman" on the *First* Lehman Mortgage, with the result that CitiMortgage's interest in the property would have priority over any interest held by the Parilles; and that the *Second* Lehman Mortgage "represent[ed] a lien" on the property with priority to the Parilles' interests. In its prayer for relief, CitiMortgage then asked the court to find that the Parilles' interests in the property were "subordinate to the interest held by CitiMortgage by virtue of the mortgage recorded on September 23, 2003" (*i.e.*, the *Second* Lehman Mortgage—which, as we have held, was not a valid instrument). This jumble of assertions does not make out a claim for equitable subrogation of the type recognized in *Shchekina*, as CitiMortgage did not seek permission to step into the shoes of Lehman so that it could enforce a prior mortgage (the First Lehman Mortgage) against the Parilles. Rather, it sought to step into Lehman's shoes but continue to enforce the newest mortgage—relief that is not available. (Similarly, the relief sought in count III, the equitable lien claim, was the imposition of a lien in the amount of the indebtedness remaining with respect to the *Second* Lehman Mortgage.) Thus, *Shchekina* is inapposite. As CitiMortgage has not sufficiently pled a claim for equitable subrogation, it has not established a basis for the imposition of a debt or duty upon Anthony. Accordingly, its claim for an equitable lien must also fail.

¶ 40 We next consider count IV, the claim of unjust enrichment. This claim was properly dismissed pursuant to section 2-619 on the basis that it was untimely. The limitations period applicable to unjust enrichment claims is five years, as set out in section 13-205 of the Code (735

ILCS 5/13-205 (West 2010)). See *Frederickson v. Blumenthal*, 271 Ill. App. 3d 738, 742 (1995). Here, CitiMortgage alleged that Anthony was unjustly enriched when the First Lehman Mortgage, which encumbered his interest in the property, was released and the new mortgage substituted for it was invalid. (This claim was pled in the alternative to CitiMortgage's contention that the Second Lehman Mortgage was a valid and enforceable instrument.) It is undisputed that this alleged unjust enrichment occurred no later than September 2003, when the First Lehman Mortgage was released. However, CitiMortgage did not bring suit until July 2010, well after the five-year limitations period had expired.

¶ 41    CitiMortgage argues that the discovery rule applied, tolling the commencement of the limitations period until it knew that the Parilles would assert the invalidity of the Second Lehman Mortgage. In Illinois, "[t]he discovery rule postpones the start of the limitations period until a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused." *Henderson Square Condominium Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 52. There is no tolling merely because a party is not aware of facts making it prudent for it to act on its legal rights, and CitiMortgage's argument to the contrary borders on the frivolous. Indeed, the Illinois Supreme Court rejected an argument similar to CitiMortgage's over a century ago, in *Ater v. Smith*, 245 Ill. 57, 71-72 (1910):

> "[I]f the circumstances were such as should have induced inquiry, and the means of ascertaining the truth were readily available upon such inquiry but the party neglects to make it, he will be chargeable with *laches* the same as if he had known the facts. The rule is the same where ignorance of the facts, or concealment of them by one whose duty it was to disclose them, is relied on to arrest the running of the Statute of Limitations."

In *Ater*, the children of a decedent asserted that they had not realized the invalidity of the deeds made by their father until after litigation for an accounting had begun, when there was testimony

that the deeds, although executed, had never been delivered. *Id*. at 71. The children argued that the statute of limitations and any *laches* period should be held not to have commenced until they had full knowledge of the lack of delivery. The supreme court rejected this argument, noting that the children had been aware of the making of the deeds at the time they were made and knew that their father died two days later and that the deeds were not recorded until after he died. Thus, it held, the children had a duty to inquire into their rights further at that time, and, as they could easily have discovered the facts upon such inquiry, their claims were barred. *Id*. at 72.

¶ 42 Here, all of the relevant facts—the Parilles' ownership of the property by the entirety, and Karyn's designation as the sole borrower under the Second Lehman Note and as the sole mortgagor under the Second Lehman Mortgage—were known (or should reasonably have been known) in September 2003 when the First Lehman Mortgage was released. Any cause of action for unjust enrichment was complete at that time, and could have been brought thereafter. The relevant facts were all of record, and the commencement of the limitations period did not await CitiMortgage's realization of the legal effect of those facts, or that the Parilles would stand upon those facts. See *id*.; see also *Waterman Hall v. Waterman*, 220 Ill. 569, 577 (1906) (where one cotenant purported to convey the entire estate, conveyance was recorded, and grantee thereafter occupied entire property, facts were sufficient to place other cotenants on inquiry notice despite their lack of awareness, until shortly before the litigation, that they had an interest in the property). Accordingly, we reject CitiMortgage's attempt to invoke the discovery rule to preserve its claim of unjust enrichment. The trial court properly dismissed count IV as untimely.

¶ 43 The same statute of limitations bars counts V and VI, the fraud claims. Like unjust enrichment, fraud is subject to a five-year limitations period under section 13-205 of the Code. *Chicago Park District v. Kenroy, Inc.*, 78 Ill. 2d 555, 560-61 (1980); *Rozny v. Marnul*, 43 Ill. 2d 54, 69 (1969). CitiMortgage raises the same argument regarding the discovery rule as it did with

respect to count IV and its argument is equally unavailing here. Although the trial court dismissed counts V and VI for failure to state claims of fraud (a conclusion with which we would likely agree, were we to consider that aspect), we may affirm a judgment on any basis appearing in the record. *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 192 (2007). Here, the Parilles sought dismissal of these counts under section 2-619 of the Code as untimely, in addition to challenging the sufficiency of the pleading under section 2-615. We affirm the dismissal of these counts on the basis of untimeliness.

¶ 44 The final argument raised by CitiMortgage concerns the trial court's denial of leave to file a fourth amended complaint. The right to amend a complaint is not absolute, but is a matter within the trial court's discretion. *Alpha School Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 748 (2009). Accordingly, we will not reverse the trial court's decision absent an abuse of that discretion. *Id*. at 748-49. Generally, a trial court should exercise its discretion liberally in favor of allowing amendments to pleadings if doing so will further the ends of justice. *Id.* at 748. In making its determination, the trial court should consider, among other things, whether the proposed amendment would cure the defective pleading or state a claim. *Id*.

¶ 45 In its proposed fourth amended complaint, CitiMortgage attempted to assert two new claims, for equitable subrogation (count VII) and conventional subrogation (count VIII). As we have already noted (*supra* ¶ 39), the proposed count VII contained a jumbled collection of allegations that did not state a claim for equitable subrogation. The proposed count VIII reveals the same problems, alleging that CitiMortgage is entitled to be subrogated to Lehman's priority with respect to the Second Lehman Mortgage and requesting a declaration that the Parilles' interests in the property are subordinate "by virtue of" the Second Lehman Mortgage. However, we have held that that mortgage was ineffective to convey any security interest to Lehman, and thus subrogation to Lehman's interest in that mortgage would not provide CitiMortgage with any

security interest in the property. As the allegations CitiMortgage sought to add in the fourth amended complaint did not adequately state any cognizable cause of action, the trial court did not abuse its discretion in denying the motion for leave to file that complaint. *Alpha School Bus Co.*, 391 Ill. App. 3d at 748-49.

¶ 46     To recap, we affirm the dismissal of all of CitiMortgage's claims except for its claim for reformation in count II. We also affirm the trial court's denial of CitiMortgage's motion for leave to file a fourth amended complaint. We now turn to the Parilles' cross-appeal.

¶ 47                                        Cross-Appeal

¶ 48     In their cross-appeal, the Parilles raise two arguments: first, that the trial court's denial of their motion to clarify or amend the judgment was improper; and second, that the trial court should have granted them attorney fees pursuant to section 15-1510(a) of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1510(a) (West 2012)). However, both of these remedies may be sought only once the underlying litigation has been concluded. Here, as the result of our reversing the dismissal of count II, the case must be remanded for further proceedings on that claim, and the trial court's orders regarding these two motions must be vacated. Given this, it would be premature for us to rule on the arguments raised in the Parilles' cross-appeal, and we decline to do so. *People v. White*, 2011 IL 109689, ¶ 153.

¶ 49                                        CONCLUSION

¶ 50     For the foregoing reasons, the judgment of the circuit court of Du Page County entered on November 24, 2014, dismissing the third amended complaint with prejudice, is affirmed as to counts I, III, IV, V, and VI, but reversed as to count II. We affirm the trial court's order of February 25, 2015, insofar as it denied leave to file a fourth amended complaint, but we vacate the portions of that order relating to the Parilles' motions to clarify or amend and for attorney fees. The cause is remanded for further proceedings consistent with this opinion.

¶ 51　Judgment affirmed in part and reversed in part; order affirmed in part and vacated in part; cause remanded.