2025 IL App (1st) 230439

FOURTH DIVISION
February 27, 2025

No. 1-23-0439

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| VERNICE THOMAS | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff- Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 19 CH 6748 |
| U.S. BANK TRUST, N.A., as Trustee for | ) | |
| LSF 10 Master Participation Trust, | ) | |
| | ) | Honorable |
| Defendant-Appellee. | ) | Alison C. Conlon, |
| | ) | Judge Presiding. |

JUSTICE LYLE delivered the judgment of the court, with opinion.
Justices Hoffman and Ocasio concurred in the judgment and opinion.

**OPINION**

¶ 1    In September 2003, the plaintiff-appellant, Vernice Thomas, and her then-husband, Jimmy

Miller, owned a home as joint tenants, and Mr. Miller refinanced the home with Wells Fargo Home

Mortgage, Inc. (Wells Fargo). On January 16, 2018, Wells Fargo, the predecessor in interest to the

defendant-appellee, U.S. Bank Trust, N.A. (U.S. Bank), filed a suit to foreclose the home. On June

3, 2019, Ms. Thomas filed a complaint to quiet title in the property, which was subsequently

consolidated with the foreclosure action. On appeal, Ms. Thomas argues the trial court erred by

granting summary judgment in favor of U.S. Bank and finding that the Wells Fargo loan served as

an encumbrance on the entire home. For the reasons that follow, we reverse the judgment of the

circuit court of Cook County and remand the case for further proceedings consistent with this order.

¶ 2                                    BACKGROUND

¶ 3      Ms. Thomas and her then-husband, Mr. Miller, acquired their home in Country Club Hills on July 30, 1996, as joint tenants via a quitclaim deed. On June 13, 2002, Mr. Miller and Ms. Thomas received a $84,900 loan from RBC Mortgage Company (RBC), which resulted in executing a mortgage in favor of RBC, which was signed by Mr. Miller and Ms. Thomas.

¶ 4      On September 11, 2003, the mortgage was refinanced, and a loan was obtained for $110,000 from Wells Fargo, which was signed by Mr. Miller and Ms. Thomas. As part of the Wells Fargo mortgage agreement, their names were printed into the contract as borrowers. Ms. Thomas and Mr. Miller initialed throughout the mortgage agreement. On the last page of the agreement, Mr. Miller's name was printed onto the original copy of the agreement. He signed above his name. Ms. Thomas' name was handwritten above a signature line on the last page, where she signed the mortgage. Underneath her signature, the handwritten language stated, "soleley [*sic*] for the purpose of waiving homestead rights." Only Mr. Miller signed the promissory note.

¶ 5      In 2015, Ms. Thomas and Mr. Miller divorced. As part of the marital settlement agreement that was incorporated into the judgment for dissolution of the marriage, Mr. Miller quitclaimed his interest in the marital home to Ms. Thomas, and she agreed to be "solely liable for the mortgage, taxes and insurance." After the divorce, Ms. Thomas continued making payments on the Wells Fargo loan until approximately September 2017.

¶ 6      On January 16, 2018, Wells Fargo, U.S. Bank's predecessor in interest, filed a suit to foreclose the mortgage. On June 3, 2019, Ms. Thomas filed a complaint to quiet title in the property, which was subsequently consolidated with the foreclosure action. Ms. Thomas'

complaint alleged that since she never received the funds from the Wells Fargo loan, she should be free of the mortgage. She claimed that she did not know what Mr. Miller asked her to sign and did not know he submitted a notarized version of the mortgage since no notary was present at the time of signing. She also admitted that the note and mortgage are authentic and that she owns the subject property.

¶ 7      Wells Fargo filed its verified answer and affirmative defenses. As part of the affirmative defenses, Wells Fargo alleged that Ms. Thomas ratified the mortgage by agreeing to the judgment and paying the mortgage for five years after that date. Additionally, she was estopped from denying the validity of the lien on the property because she accepted the benefit of the mortgage and continued to live at the property. Ms. Thomas filed an unverified response to the affirmative defenses. In her response to the affirmative defenses, she argued that if the court finds in Wells Fargo's favor regarding the fees, there should be a set off in recognition of the amount she paid towards the refinanced mortgage.

¶ 8      In her written interrogatories, Ms. Thomas admitted that she paid all the expenses for the property after her dissolution of marriage, that a portion of the proceeds from the Wells Fargo loan was used to pay off the RBC mortgage, and that the Wells Fargo loan was the only mortgage on the property.

¶ 9      Kristine Duerlinger, an administrative manager for Wells Fargo, submitted a declaration, in which she stated, based on her review of the documents from the Wells Fargo mortgage, she did not believe the executed mortgage was sent back to the bank before Wells Fargo funded the loan. She averred that the mortgage originated with the assistance of a settlement agent with the third-party company, Titles R Us. She explained that in 2003, the date of the mortgage, settlement agents were not authorized to make material changes to the loan documents without prior authorization

from Wells Fargo. However, she conceded that she was unaware if such an authorization was requested or provided.

¶ 10    Christy Jepson, an attorney and manager for Titles R Us when the mortgage was created, was deposed and stated he formed the company to perform real estate settlement services for a mortgage lender. In his deposition, he explained three scenarios regarding a nonborrowing spouse for a mortgage refinancing—a nonborrowing spouse who is an owner of the property, a nonborrowing spouse who does not live at the property, and a nonborrowing spouse who is waiving homestead rights. In the first situation, he would have the nonborrowing spouse sign the mortgage, which would bind the spouse to the lien and secure the note. If the nonborrowing spouse did not live at the property and was not an owner, it would not be necessary for her to sign the mortgage. In situations where, like here, the nonborrowing spouse lived at and owned the property, the spouse would either sign the mortgage or sign it for the exclusive purpose of waiving homestead. Mr. Jepson stated that he wrote the qualifying language of "soleley [*sic*] for the purpose of waiving homestead rights" and, while he did not remember the particular transaction, claimed that the ultimate consent for alterations came from the lender who would have to authorize the document before dispersing funds.

¶ 11    Ms. Thomas was deposed and stated that she did not know her former husband refinanced the property. She admitted it was her signature on the mortgage but claimed she did not know what she was signing or who put in the "soleley [*sic*] for the purpose of waiving homestead rights" language. On December 3, 2021, U.S. Bank filed a motion for summary judgment on Ms. Thomas' complaint and U.S. Bank's counterclaims. Ms. Thomas filed a response to the motion for summary judgment, arguing that she was not a "borrower" within the meaning of the mortgage and merely signed away her homestead rights.

¶ 12    On July 8, 2022, the trial court granted the summary judgment motion, denied Ms. Thomas'

complaint to quiet title, and denied the counterclaims as moot. On August 1, 2022, Ms. Thomas

filed a motion to reconsider, arguing that the court failed to apply the typewriter rule and failed to

explain how the dissolution could satisfy the mortgage conveyance requirements. The trial court

denied the motion, stating that neither party argued that the mortgage was ambiguous. On March

3, 2023, Ms. Thomas filed her notice of appeal.

¶ 13                                              ANALYSIS

¶ 14    We note that we have jurisdiction to consider these matters, as Ms. Thomas filed a timely

notice of appeal following the trial court's judgment. See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R.

303 (eff. July 1, 2017).

¶ 15    On appeal, Ms. Thomas argues that the trial court erred by granting U.S. Bank's motion

for summary judgment. She contends the error occurred because the trial court did not correctly

apply the law or alternatively find that the mortgage was ambiguous.

¶ 16    "Summary judgment is appropriate when there are no genuine issues of material fact and

the moving party is entitled to judgment as a matter of law." *Outboard Marine Corp. v. Liberty*

*Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). Summary judgment should be granted only

where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most

favorable to the nonmoving party, show that there is no genuine issue as to any material fact and

that the moving party is clearly entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c)

(West 2018); *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). Our review of a trial

court's summary judgment ruling is *de novo*. *Dumke v. City of Chicago*, 2013 IL App (1st)

121668, ¶ 11.

¶ 17    "If any pleading is so verified, every subsequent pleading must also be verified, unless

verification is excused by the [trial] court." 735 ILCS 5/2-605(a) (West 2018). When a pleading subsequent to a verified pleading is unverified, all well-pleaded facts in the verified pleading are deemed admitted. *Marren Builders, Inc. v. Lampert*, 307 Ill. App. 3d 937, 942 (1999). However, "[e]xhibits are a part of the complaint to which they are attached, and the factual allegations contained within an exhibit attached to a complaint serve to negate inconsistent allegations of fact contained within the body of the complaint." *Burton v. Airborne Express, Inc.*, 367 Ill. App. 3d 1026, 1034 (2006). Where the attachment is a contract, the construction of a contract is a question of law, which is reviewed *de novo*. *Gallagher v. Lenart*, 226 Ill. 2d 208, 219 (2007).

¶ 18    After U.S. Bank filed its verified answer, affirmative defenses, and counterclaims, Ms. Thomas' reply and answer to the counterclaims were unverified. That means the allegations that the proceeds of the Wells Fargo mortgage were used to pay off the RBC mortgage and that the dissolution of marriage judgment made Ms. Thomas "soleley liable for the mortgage, taxes, and insurance" must be taken as true.

¶ 19    With that information in mind, we consider the impact of Ms. Thomas' signature on the mortgage, given the handwritten language of "soleley [*sic*] for the purpose of waiving homestead rights," and the fact that she did not sign the note.

¶ 20    In *CitiMortgage, Inc. v. Parille*, 2016 IL App (2d) 150286, ¶ 7, the Second District of the Illinois Appellate Court reviewed whether a husband, who signed a mortgage with handwritten language stating he signed for the sole purpose of waiving his homestead rights, was liable for the mortgage. In that case, the appellate court found that the trial court did not err by finding that only the wife signed the mortgage without qualification, which made her the only mortgagor. *Parille*, 2016 IL App (2d) 150286, ¶ 25. The court ruled that the language of the contract was unambiguous and that only the wife signed the mortgage without qualification, binding her solely to the

mortgage. *Parille*, 2016 IL App (2d) 150286, ¶ 25.

¶ 21 U.S. Bank asks us to find *Berg v. eHome Credit Corp.*, 848 F. Supp. 2d 841 (N.D. Ill. 2012), analogous and rule that the mortgage encumbered the entire property. Federal district court decisions are not binding on state courts, but we may look at them as persuasive authority. *People v. Kent*, 2017 IL App (2d) 140917, ¶ 88.

¶ 22 In *Berg*, 848 F. Supp. 2d at 843, Mr. Berg and Ms. Berg purchased a property in 2000 and were tenants by the entirety. The loan was refinanced by Mr. Berg through a loan from eHome Credit Corporation, and he was the only signatory on the note. On the refinanced mortgage, Ms. Berg was listed as a borrower, along with Mr. Berg, and signed the mortgage with the qualifying language stating " 'Here by releasing and waiving all rights under and by virtue of the Homestead Exemption Laws of this State.' " *Berg*, 848 F. Supp. 2d at 843. Mr. Berg filed for bankruptcy, and the property was sold under the direction of the bankruptcy court with half the proceedings being deposited with the clerk of the court, representing Ms. Berg's half-interest. *Berg*, 848 F. Supp. 2d at 843. The lender of the refinance moved for summary judgment, asserting it should be awarded the money because the first clause of the mortgage listed Ms. Berg as a borrower. *Berg*, 848 F. Supp. 2d at 844. The court found that since Mr. and Ms. Berg were tenants by the entirety and Mr. Berg could not mortgage his interest without Ms. Berg's consent, they both must have intended to mortgage their interest. *Berg*, 848 F. Supp. 2d at 845. The court chose not to place weight on the handwritten qualifying language by Ms. Berg's signature because it found that the language was duplicative of one of the clauses in the mortgage. *Berg*, 848 F. Supp. 2d at 846-47. Those factors led the court to determine that the mortgage encumbered the entire interest in the property. *Berg*, 848 F. Supp. 2d at 847.

¶ 23 We do not find the Berg decision persuasive or sufficiently similar to the matter before us.

Here, Mr. Miller and Ms. Thomas owned the property as joint tenants as opposed to tenants by the entirety. Therefore, Mr. Miller was able to mortgage his interest if that was his intention. The allegations that Ms. Thomas is the borrower are rebutted by the mortgage itself where the handwritten language states that her signature was solely to waive her homestead rights. As in *Parille*, 2016 IL App (2d) 150286, ¶ 25, Ms. Thomas signed the mortgage on the condition that she was just waiving homestead rights not as a borrower on the mortgage. That distinction is amplified by the fact that she did not sign the promissory note. While we note the fact that she initialed every page of the document and was listed as a borrower on the initial page of the mortgage, we must give effect to that handwritten qualification. There is no way to adequately give meaning to that language without reading the mortgage as Mr. Miller is the sole borrower and Ms. Thomas signed away her homestead rights. To do otherwise is to render the qualifying language in the signature block superfluous. *Thompson v. Gordon*, 241 Ill. 2d 428, 442 (2011) ("A court will not interpret a contract in a manner that would nullify or render provisions meaningless, or in a way that is contrary to the plain and obvious meaning of the language used."). As a result, we find that the only mortgagor on the Wells Fargo loan was Mr. Miller.

¶ 24    Though we find that Mr. Miller was the sole mortgagor on the loan, we must determine whether Ms. Thomas is still liable for the loan. U.S. Bank argues that since the Wells Fargo loan paid off the entirety of the RBC loan which she undisputably was liable for payment, she was unjustly enriched by the payment if she was able to obtain the property unencumbered. Alternatively, U.S. Bank raises a claim for equitable subrogation or equitable lien.

¶ 25    "To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good

conscience." *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160 (1989). There is a five-year statute of limitation on all claims of unjust enrichment for real property. 735 ILCS 5/13-205 (West 2022); see *Parille*, 2016 IL App (2d) 150286, ¶ 40.

¶ 26    U.S. Bank appropriately argues that we can affirm on any basis within the record. See *Motorola Solutions, Inc. v. Zurich Insurance Co.*, 2015 IL App (1st) 131529, ¶ 104. However, we can only affirm on a basis, which is legally sound. Though the parties did not discuss the statute of limitations for unjust enrichment, we cannot find unjust enrichment where that statute of limitations has run. The Wells Fargo mortgage refinance was drafted and signed in 2003. U.S. Bank, the successor in interest to the mortgage of Wells Fargo, did not file any claim until 2018, more than five years after the underlying action of paying off the RBC mortgage. See *Parille*, 2016 IL App (2d) 150286, ¶ 40 (finding that a bank's claim was untimely since where an unjust enrichment claim was filed almost seven years after the funds of the mortgage were released). Therefore, we cannot affirm the summary judgment on the grounds of unjust enrichment.

¶ 27    "An equitable lien is the right to have property subjected to the payment of a claim. It is neither a debt nor right of property, but a remedy for a debt." *W.E. Erickson Construction, Inc. v. Congress-Kenilworth Corp.*, 132 Ill. App. 3d 260, 269 (1985). An equitable lien arises in two situations: (1) "where the parties express in writing their intention to make a particular property, real or personal, or some fund the security for a debt, or where there has been a promise to convey or assign the property as security" and (2) "equity has also recognized similar liens without an express agreement between the parties which arise wholly from general considerations of fairness and justice, such as where a party has made improvements on the property of another." *Congress-Kenilworth Corp.*, 132 Ill. App. 3d at 269-70. "In either case, the essential elements of an equitable lien are (1) a debt, duty or obligation owing by one person to another, and (2) a *res* to which that

obligation fastens." *Congress-Kenilworth Corp.*, 132 Ill. App. 3d at 270.

¶ 28    In this case, U.S. Bank asked for equitable subrogation but instead of being put in the shoes of the RBC mortgage it requested that the trial court enforce the Wells Fargo loan, which it inherited. As stated in *Parille*, 2016 IL App (2d) 150286, ¶ 39, if a bank seeks to enforce the latest agreement instead of reinstituting the last valid agreement, its claim for equitable lien or subrogation fails. Accordingly, we find that equitable subrogation is not appropriate based on the requested relief.

¶ 29    However, though we find that Mr. Miller was solely responsible for the Wells Fargo loan at its inception, we must consider what effect Mr. Miller's conveyance to Ms. Thomas had on her obligation to the Wells Fargo loan since Mr. Miller and Ms. Thomas were joint tenants at the time of the mortgage.

¶ 30    "A joint tenant can sever a joint tenancy by conveying his or her interest without the consent or permission of the other." *Olney Trust Bank v. Pitts*, 200 Ill. App. 3d 917, 921 (1990). However, "when a land owner purports to grant, by deed or other instrument, a greater estate than he actually owns, the conveyance is void only as to the excess but is operative to pass the estate which the grantor has." *Cadle Co. II, Inc. v. Stauffenberg*, 221 Ill. App. 3d 267, 269-70 (1991). "Where a cotenant who owns less than the entire interest attempts to mortgage the whole, the mortgage is valid as to the actual interest of the mortgagor." *Stauffenberg*, 221 Ill. App. 3d at 269. The joint tenant's mortgage acts as a lien on the joint tenant's portion of the property. *Harms v. Sprague*, 105 Ill. 2d 215, 224 (1984). In that case, "the mortgagee may then foreclose and recover such one-half interest in the case of default." *First Midwest v. Pogge*, 293 Ill. App. 3d 359, 362-63 (1997).

¶ 31    When Mr. Miller obtained the mortgage, it existed as a lien on only his undivided half-

interest in the home that he and Ms. Thomas shared. While Wells Fargo may have thought they were acquiring an interest in the entire home, Mr. Miller only had the ability to mortgage his undivided one-half interest in the property. At the time of the conveyance, Ms. Thomas received Mr. Miller's interest in the property subject to the encumbrance from the Wells Fargo mortgage. After she stopped paying the mortgage, U.S. Bank, as the successor of the Wells Fargo loan, moved to foreclose on the entire property, suggesting that both Mr. Miller and Ms. Thomas signed the mortgage thereby creating an encumbrance on the whole property which they sought to foreclose upon. The trial court accurately found that Ms. Thomas could not quiet title given the encumbrance of the Wells Fargo mortgage. However, as stated, the trial court erred by finding that Ms. Miller was bound to the mortgage at its creation. As a result, the lien only attached to a half-interest in the property at its inception and later during its conveyance. Therefore, U.S. Bank was only able to foreclose on the half-interest. Thus, we reverse the summary judgment finding and remand this case back to the trial court.

¶ 32                                       CONCLUSION

¶ 33     For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand for further proceedings consistent with this order.

¶ 34     Reversed and remanded.

*Thomas v. U.S. Bank Trust, N.A.*, 2025 IL App (1st) 230439

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-CH-6748; the Hon. Alison C. Conlon, Judge, presiding. |
| **Attorneys for Appellant:** | David Sweis, of Sweis Law Firm, P.C., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Jennifer R. Friedman, of Fidelity National Law Group, of Chicago, for appellee. |